**Harold IVINS and Jean Ivins, his wife**

**v.**

**The CELOTEX CORPORATION, etc., et al.**

**Civ. A. No. 84–4349.**

United States District Court, E.D. Pennsylvania.

Dec. 19, 1986.

On Motion for Reconsideration March 3, 1987.

---

**160**

Walter D. Meeley, Richard A. Curtis, John F. Ledwith, John Patrick Kelley, G. Daniel Bruch, Jr., James F. Hammill, Barbara Pennell, Arthur Makadon, Vincent F. Reilly, Joan K. Garner, Asst. U.S. Atty., Fredric L. Goldfein, Roseann Lynn Brenner, Philadelphia, Pa., Stewart C. Crawford, Media, Pa., Edmund K. John, West Chester, Pa., for defendants.

Sandra F. Gavin, Philadelphia, Pa., for plaintiffs.

## MEMORANDUM

NEWCOMER, District Judge.

### I   INTRODUCTION

This is an asbestos case. Presently before the court is defendant Owens Corning Fiberglass' motion to dismiss plaintiffs' claims for punitive damages or, in the alternative, to exclude evidence which would support plaintiffs' claims for punitive damages. In a related motion, plaintiffs seek the production of information regarding the net worth of Owens Corning Fiberglass (hereinafter "OCF"), Celotex, Owens Illinois, and Pittsburgh Corning Corporation.

At the outset, the court notes that OCF failed to set forth the nature of the present motion. As the motion addresses (1) the continued validity of plaintiffs' punitive claims as a matter of law and (2) the admissibility of all evidence concerning punitive damages, the motion may be viewed as one for summary judgment pursuant to Fed.R. Civ.P. 56 and a motion *in limine* to preclude evidence.

### II   SUMMARY JUDGMENT MOTION

A trial court may enter summary judgment if after a review of all evidentiary material in the record in a light favorable to the party opposing the motion, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Bank of America Nat. Trust and Sav. Ass'n v. Hotel Rittenhouse Associates*, 595 F.Supp. 800 (E.D.Pa.1984). Where no reasonable resolution of the conflicting evidence and inferences therefrom could result in a judgment for the non-moving party, the moving party is entitled to summary judgment. *Tose v. First Pennsylvania Bank, N.A.*, 648 F.2d 879, 883 (3d Cir.) *cert. denied* 454 U.S. 893, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981).

In their memoranda, OCF and the plaintiffs do not address the apparent choice of law question presented by this case. Both sides assume, without discussion, that Pennsylvania or New Jersey law applies to the case. The court declines to determine which state's law applies since the parties have not raised the issue; rather, the court will examine the summary judgment motion with respect to both Pennsylvania and New Jersey law.

### A.   *Applicable Standard for Punitive Damages*

1. Pennsylvania Law

Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. Restatement (Second) of Torts § 908(2) (1977). The Pennsylvania Supreme Court has specifically adopted this statement concerning punitive damages. *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742 (1984), *citing to Chambers v. Montgomery*, 411 Pa. 339, 192 A.2d 355 (1963).[1] In discussing the

---

1. *Chambers* referred to Restatement of Torts § 908 (1939). Section 908 provides:

 PUNITIVE DAMAGES
   (1) "Punitive damages" are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct.
   (2) Where punitive damages are permissible, their allowance and amount are within the discretion of the trier of fact. In assessing such damages, the trier of fact can properly

type of conduct which would justify the imposition of punitive damages, the *Feld* decision stated that punitive damages must be based on conduct which is "malicious," "wanton," "reckless," "willful," or "oppressive." *Feld*, 506 Pa. 383, 485 A.2d at 747–8, *citing to Chambers*, 411 Pa. 339, 192 A.2d at 358 and *Hughes v. Babcock*, 349 Pa. 475, 37 A.2d 551 (1944); *see Neal v. Carey Canadian Mines, Ltd.*, 548 F.Supp. 357, 377 (E.D.Pa.1982) (discussing Pennsylvania law), *aff'd on other grounds* 760 F.2d 481 (3d Cir.1985); *Dean Witter Reynolds, Inc. v. Genteel*, 346 Pa.Super. 336, 499 A.2d 637, 643 (1985); *Delahanty v. First Pennsylvania Bank N.A.*, 318 Pa.Super. 90, 464 A.2d 1243, 1263 (1983); *Smith v. Brown*, 283 Pa.Super. 116, 423 A.2d 743, (1980) (reckless or wanton misconduct supports imposition of punitive damages); *see also Feingold v. S.E.P.T.A.*, 512 Pa. 567, 517 A.2d 1270 (1986) (Larsen, J., dissenting).

At issue in the present case is whether defendant OCF's conduct was wanton or reckless. Several Pennsylvania cases have considered the question of what constitutes wanton or reckless conduct.

In *Evans v. Philadelphia Transportation Co.*, 418 Pa. 567, 212 A.2d 440 (1965) the Supreme Court reviewed the trial court's denial of a j.n.o.v. motion which raised the issue of whether the evidence presented could warrant a finding of "wanton misconduct." The appellant had contended that wanton misconduct existed only when the actor had actual knowledge of the danger for a sufficient period of time to give him a reasonable opportunity to take measures to avoid the danger. In clarifying the distinction between willful misconduct and wanton misconduct, the court stated that wanton misconduct "means that the actor has intentionally done an act of unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Evans*, 418 Pa. at 574, 212 A.2d 440, *citing to* Prosser, Torts § 33 at 151 (2 ed. 1955). The court further stated:

> Other decisions of this Court have recognized that *actual* prior knowledge of the injured person's peril need not be affirmatively established to constitute wanton misconduct. These cases, as well as the Restatement of Torts, clearly indicate that if the actor realizes or at least has knowledge of sufficient facts to cause a reasonable man to realize the existing peril for a sufficient period of time beforehand to give him a reasonable opportunity to take means to avoid the accident, then he is guilty of wanton misconduct if he recklessly disregards the existing danger.

*Id.* In discussing wanton misconduct and reckless disregard the opinion cited with approval to the Restatement of Torts § 500 (1934),[2] and Comment d thereto. Thus, the

---

consider the character of the defendant's act, the nature and extent of the harm to the plaintiff which the defendant caused or intended to cause, and the wealth of the defendant.

Comment b provides:

   b. *Character of defendant's conduct.* Punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others.

**2.** Section 500 provides:
RECKLESS DISREGARD OF SAFETY DEFINED.

   The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.

   *Special Note:* The conduct described in this Section is often called "wanton or wilful misconduct" both in statutes and judicial opinions. On the other hand, this phrase is sometimes used by courts to refer to conduct intended to cause harm to another.

Comment b provides:

   b. *Perception of risk.* Conduct cannot be in reckless disregard of the safety of others unless the act or breach of duty is itself intended, notwithstanding that the actor knows of facts which would lead any reasonable man to realize the extreme risk to which it subjects the safety of others....

standard ennunciated required 1) an intentional act 2) when the actor knew or had reason to know of facts 3) where such facts would lead a reasonable person to realize that the conduct creates a substandial probability of unreasonable harm. The court interchanged the terms wanton misconduct and reckless disregard, supporting the conclusion that the two terms reflected the same conduct. *Id.* n. 5. The court rejected appellant's argument and upheld the denial of the j.n.o.v. motion. 418 Pa. at 577, 212 A.2d 440.

Similarly, in *Wilson v. Pennsylvania Railroad Co.*, 421 Pa. 419, 427-31, 219 A.2d 666 (1966) the court again rejected the argument that wanton misconduct required actual knowledge of the danger. There, the trial court had refused to charge the jury on the issue of wanton misconduct. The trial court had justified its refusal because "the burden rests with the plaintiff to show *actual knowledge*" of the danger. *Wilson*, 421 Pa. at 428, 219 A.2d 666 (emphasis in original). In determining that the trial court's refusal was not proper, the Supreme Court referred to the *Evans* decision and stated that wanton misconduct exists where the actor had actual knowledge of the danger or had reason to know of the danger. *Id. discussing Evans*, 418 Pa. 567, 212 A.2d 440. In *Wilson*, the Supreme Court determined that "there was sufficient testimony upon which a jury could have found that, despite the [train] engineer's specific assertion that he did not

realize the danger to the decedent until it was too late to avoid the accident, the engineer had reason to know of the danger in light of all the circumstances." [3] 421 Pa. at 429, 219 A.2d 666 (emphasis and footnote omitted).

The above analysis reveals that Pennsylvania courts adopted the following principles. First, punitive damages could be based on wanton or reckless conduct. *Chambers*, 411 Pa. 339, 192 A.2d 355. Second, wanton or reckless conduct existed where the actor did an intentional act, knowing or having reason to know of facts which would lead a reasonable person to conclude that the actor's conduct created a high probability of unreasonable risk to another. *Evans*, 418 Pa. 567, 212 A.3d 440; *Wilson*, 421 Pa. 419, 219 A.2d 666.

Subsequent Pennsylvania cases have reinforced the holdings in *Evans* and *Wilson. Fugagli v. Camasi*, 426 Pa. 1, 229 A.2d 735 (1967) concerned a high-speed automobile accident where the defendant was intoxicated. The trial court had refused to charge on the issue of wanton misconduct. The Supreme Court reversed. It is not necessary for the actor to have had actual knowledge of the danger to the other person; wanton misconduct exists if the actor has knowledge of sufficient facts to cause a reasonable person to realize the existing danger for a sufficient time to give him a reasonable opportunity to avoid the danger, and the actor disregards those facts. *Fugagli*, 426 Pa. at 3, 229 A.2d 735.

Comment c provides:

c. *Appreciation of extent and gravity of risk.* In order that the actor's conduct may be reckless, it is not necessary that he himself recognize it as being extremely dangerous. His inability to realize the danger may be due to his own reckless temperament or to the abnormally favorable results of previous conduct of the same sort. It is enough that he knows or has reason to know of circumstances which would bring home to the realization of the ordinary, reasonable man the highly dangerous character of his conduct.

Comment d provides:

d. *Knowledge of presence of others within danger zone.* If the actor's conduct is such as to involve a high degree of chance that serious harm will result from it to anyone who is within range of its effect, the fact that he

knows or has reason to know that others are within such range is conclusive of the recklessness of his conduct toward them. It is, however, not necessary that the actor should know that here is anyone within the area made dangerous by his conduct. It is enough that he knows that there is strong probability that others may rightfully come within such zone.

It is interesting to note that the central principle expressed in § 500 and Comment d did not change substantively from the first Restatement to the second Restatement.

3. The Supreme Court eventually determined that any error in refusing the plaintiff's proposed points was cured by other instructions. *Wilson*, 421 Pa. at 431, 219 A.2d 666.

*Focht v. Rabada,* 217 Pa.Super. 35, 268 A.2d 157 (1970) focused on the meaning of recklessness and whether punitive damages can be imposed on an intoxicated driver who causes injury to another. The court first noted that *Chambers* had adopted the Restatement of Torts § 908 and stated that reckless indifference or bad motive supported an award of punitive damages. In determining the nature of a "reckless" act, the court referred to *Evans* and the Restatement of Torts § 500, Comment d. Comment d focuses on the actor's knowledge of people within the range of the conduct's effect. Where the "actor's conduct is such as to involve a high degree of chance that serious harm will result from it to anyone who is within range of its effect, the fact that [the actor] knows or has reason to know that others are within such range is conclusive of the recklessness of his conduct ..." *Focht,* 217 Pa.Super. at 39, 268 A.2d 157, *citing to* Comment d; *Evans;* and *Fugagli; see also Medvecz v. Choi,* 569 F.2d 1221, 1226 (3d Cir.1977) (in discussing the imposition of punitive damages and the meaning of "reckless indifference," the Third Circuit referred to *Focht* and Restatement of Torts § 500, Comment d (1934)). *Focht* reiterated that it was not necessary for the actor to have actual knowledge of the other person's peril to constitute wanton misconduct; rather, wanton misconduct existed where the actor had knowledge of sufficient facts to cause a reasonable man to realize that the danger existed. *Focht,* 217 Pa.Super. at 39, 268 A.2d 157, *referring to Fugagli, supra. Focht* concluded that the conduct at issue could constitute reckless conduct and support the imposition of punitive damages.

Again, in *Smith v. Brown,* 283 Pa.Super. 116, 423 A.2d 743, 745 (1980) the court stated reckless indifference or wanton misconduct exists where the actor has intentionally done a act of unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. *Id. citing to Evans,* 418 Pa. 567, 212 A.2d 440 (1965). Reckless indifference or wanton misconduct would support the imposition of punitive damages. *Smith,* 283 Pa. Super. 116, 423 A.2d at 745.

The American Law Institute updated the first Restatement and adopted the Restatement (Second) of Torts. Section 500—adopted in 1964—is set forth in the margin.[4] The central principle (set forth in

---

**4.** § 500. Reckless Disregard of Safety Defined

The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

Special Note: The conduct described in this Section is often called "wanton or wilful misconduct" both in statutes and judicial opinions. On the other hand, this phrase is sometimes used by courts to refer to conduct intended to cause harm to another.

Comment:

a. *Types of reckless conduct.* Recklessness may consist of either of two different types of conduct. In one the actor knows, or has reason to know, as that term is defined in § 12, of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk. In the other the actor has such knowl-

edge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so. An objective standard is applied to him, and he is held to the realization of the aggravated risk which a reasonable man in his place would have, although he does not himself have it.

For either type of reckless conduct, the actor must know, or have reason to know the facts which create the risk. For either, the risk must itself be an unreasonable one under the circumstances. ...

b. *Perception of risk.* Conduct cannot be in reckless disregard of the safety of others unless the act or omission is itself intended, notwithstanding that the actor knows of facts which woudl lead any reasonable man to realize the extreme risk to which it subjects the safety of others. It is reckless for a driver of an automobile intentionally to cross a through highway in defiance of a stop sign if a stream of vehicles is seen to be closely approaching in both directions, but if his failure to stop is due to the fact that he has permitted his attention to be diverted so that

§ 500) and Comment d did not change between the first and second Restatements. As the above review shows, Pennsylvania courts have consistently referred to the central principle in § 500 in discussing wanton or reckless conduct.

The Pennsylvania Supreme Court recently had occasion to consider the imposition of punitive damages in an asbestos case. *Martin v. Johns-Manville Corp.*, 508 Pa. 154, 494 A.2d 1088 (1985). The court—in a plurality opinion—concluded that the evidence concerning the defendants' conduct did not demonstrate recklessly indifferent conduct which would permit the imposition of punitive damages. Two Justices adopted the opinion which announced the judgment of the court (hereinafter the "Opinion"). Two Justices concurred in the result without opinion. Two Justices concurred in the result but issued a concurring opinion (hereinafter the "Concurring Opinion"). One Justice did not participate in the consideration or decision of the case. The Concurring Opinion specifically disagreed with the with the standard announced in the Opinion concerning the requisite mental state for punitive damages.

The Opinion stated that "wanton misconduct" is not to be equated with "outrageous conduct ... done with reckless indifference to the interests of others." *Martin*, 508 Pa. 154, 494 A.2d at 1097, *citing to McSparran v. Pennsylvania Railroad Co.*, 258 F.Supp. 130, 134 (E.D. Pa.1966). The Opinion also stated that punitive damages are appropriate only where the actor knows, or has reason to know, ... of facts which create a high degree of risk of physical harm to another and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, the risk. 508 Pa. 154, 494 A.2d at 1097. The Opinion indicated that punitive damages would not be appropriate where the actor has such knowledge, or reason to know the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable person in his position would do so. *Id.* The Opinion also states that an actual appreciation of the risk—on the part of the actor—before punitive damages may be imposed. *Id.* n. 12, *referring to* Restatement (Second) of Torts § 908 Comment b. The Opinion was joined by only two Justices.

As has been noted, four Justices concurred only in the result. The Concurring Opinion focused on the requsite mental state for punitive damages and specifically "[took] issue with the implication that wanton misconduct may not be sufficient grounds upon which to assess punitive damages." *Martin*, 508 Pa. 154, 494 A.2d at 1101 (McDermott, J., concurring). The Concurring Opinion stated that the Opinion's discussion of the requisite mental state contradicted clear precedent. *Id.* citing to Evans; Fugagli; Focht; Feld; see also Smith v. Brown, 283 Pa.Super. 116, 423 A.2d 743, 745 (equating reckless indifference with wanton misconduct and stating that the presence of either would support punitive damages).

In light of the *Martin* Opinion and Concurring Opinion and the fact that four justices concerned only in the result, the Opinion cannot constitute a definitive statement

---

he does not know that he is approaching the crossing, he may be merely negligent and not reckless ...

c. *Appreciation of extent and gravity of risk.* In order that the actor's conduct may be reckless, it is not necessary that he himself recognize it as being extremely dangerous. His inability to realize the danger may be due to his own reckless temperament, or to the abnormally favorable results of previous conduct of the same sort. It is enough that he knows or has reason to know of circumstances which would bring home to the realization of the ordinary, reasonable man the highly dangerous character of his conduct.

d. *Knowledge of presence of others within danger zone.* If the actor's conduct is such as to involve a high degree of risk that serious harm will result from it to anyone who is within range of its effect, the fact that he knows or has reason to know that others are within such range is conclusive of the recklessness of his conduct toward them....

The major difference between the first Restatement and the Second Restatement, is that the Comment a to the latter discusses two different types of reckless conduct.

on the requisite mental state for punitive damages. *Cf. Kirkbridge v. Lisbon Contractors, Inc.*, 357 Pa.Super. 322, 516 A.2d 1 (1986) (Del Sole, J., dissenting) (discussing the limited application of *Martin*). Therefore, in the present case, this Court shall refer the standard set forth in the *Chambers-Evans-Focht* line of cases. These cases indicate that wanton or reckless conduct exists if the actor knows or has reason to know that the conduct creates a substantial risk of harm to another and the actor disregards the other person's peril. Wanton or reckless conduct also exists where an individual acts intentionally and knows or should have known of facts to cause a reasonable person to realize for a sufficient period of time that the conduct creates an unreasonable danger and the risk of such danger is so great as to make it very probable that harm would follow.

## 2. New Jersey Standard

New Jersey law concerning the award of punitive damages is clear. Punitive damages are available in failure-to-warn, strict liability actions where a manufacturer is (1) aware of or culpably indifferent to an unnecessary risk of injury and (2) refuses to take steps to reduce that danger to an acceptable level. *Fischer v. Johns-Manville Corp.*, 103 N.J. 643, 670–71, 512 A.2d 466 (1986). This standard can be met by a showing if "a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences. *Id.* at 671, 512 A.2d 466.

## B. *Plaintiffs' Proofs*

Plaintiffs' proofs vis-a-vis OCF concerning punitive damages are summarized at pages 2–8 of plaintiff's memorandum of law. These proofs include the Saranac Laboratories documents. These documents—in part—indicate that laboratory studies conducted in 1948 on animals exposed to Kaylo revealed that "...unmistakable evidence of asbestosis had developed" and demonstrated that "Kaylo on inhalation is capable of producing asbestosis and must be regarded as potentially-hazardous

material." Plaintiffs' proofs also indicate that when Owens-Illinois sold its Kaylo operation to OCF in 1958 these Saranac documents were transferred to OCF. In addition, it appears that OCF had a close corporate relationship with Owens-Illinois. This relationship is evidenced by the formation—in the early 1940's—of OCF by Owens-Illinois and Corning Glass Works. Furthermore, it appears that plaintiffs' proofs will include the deposition testimony of Mr. Edward Ames. It appears that Mr. Ames was the personal assistant to Mr. Harold Boeschenstein, the president of OCF. It also appears that Mr. Ames was involved in public relations related activities. The deposition testimony of Ames apparently will cover OCF's knowledge of the dangerous nature of asbestos insulation products in the 1940's. Ames' testimony will cover the so-called "asbestos file." The publication of the proposed asbestos file—which contained government reports concerning the dangerousness of asbestos—was envisioned as means to combat resistance to OCF's fiberglass operation.

Plaintiffs' proofs in the present case differ from the evidence presented in *Martin* which was deemed insufficient to support punitive damages. The evidence in *Martin* included testimony of one witness who stated he was unsure whether the subject of warnings, in connection with insulation products, appeared in any literature prior to 1964 and of what knowledge the asbestos industry had, at any time, converning the dangers of asbestos. 508 Pa. 154, 494 A.2d at 1095. Also, the medical consultant to Philip Carey Manufacturing Co. testified that he had emphasized to Philip Carey that insulation workers did face some risks but had only minimal exposure to asbestos. 508 Pa. 154, 494 A.2d at 1096. This witness also testified that no reports indicating insulation workers could contract asbestosis existed prior to 1962 although the risk had been established long before 1962. *Id.* In *Martin*, the plaintiff worked as an industrial and commercial applicator of asbestos-containing thermal insulation manufactured between 1939 and 1978. Mr. Martin had based his claim for punitive dam-

ages on the fact that prior to 1964 none of the defendants placed any warnings on their products concerning the risk of pulmonary ailments associated with exposure to asbestos, even though the medical profession knew of such risks in the 1930's.

The proof in the present case differs from the evidence presented in *Martin* in that the "Saranac" documents support the inference that in the 1940's and 1950's Owens Illinois and OCF were aware that exposure to asbestos posed significant health risks. Furthermore, the testimony of Ames may support the inference that in the 1940's OCF was aware of the risks posed by asbestos or—at least—that information about the risks of asbestosis were readily available in government publications.

### C. *Application of the Standard to Plaintiffs' Proofs*

■ Defendant OCF supports its motion by referring to the *Martin* opinion and arguing that the plaintiffs' proof do not support punitive damages. *See* OCF Memoranda Opposing Punitive Damages at 2, 6.

In the present procedural context, plaintiffs' proofs require the denial of OCF's motion. The conclusion is the same whether one uses the standard announced in the *Chambers-Evans-Focht* line of cases or the one in the Opinion announcing the judgment of the Court in *Martin.* The result is also the same under the New Jersey standard announced in *Fischer.* First, the Saranac documents could support the inference that Owens-Illinois and OCF were aware of the potential dangers associated with the manufacture and installation of asbestos. The Saranac documents could indicate that Owens-Illinois and OCF had knowledge of the danger sometime between 1948 and 1958. Second, Ames' testimony with respect to OCF's familarity with asbestos and the contemplated publication of the "asbestos file" may support the inference that OCF was aware of the hazards of asbestos in mining and factory settings. Such evidence could also show that OCF knew or should have known of such facts as would cause a reasonable person to real-

ize the existence of a serious danger. Since plaintiffs' proofs may support the inference that defendant OCF—long before it took ameliorative action—1) knew of the risks associated with asbestos or 2) knew or should have known of facts which would cause a reasonable person to realize that exposure to asbestos caused significant health risks, it would be inappropriate to dismiss plaintiff's claim for punitive damages as a matter of law. In short, under Pennsylvania and New Jersey law, the proofs may support the inference that defendant OCF had the requisite mental state to support the imposition of punitive damages.

### III. DEFENDANT OCF'S IN LIMINE MOTION

■ OCF argues that Ames' testimony is not relevant to punitive damages, Ames is not competent to testify about the health problems of insulators in 1941–2, and the probative value of Ames' testimony is substantially outweighed by the danger of prejudice and confusion. OCF also argues that the Saranac documents and the testimony of Mr. Willis Hazard do not support the necessary state of mind. Lastly, OCF objects to the admission of Louis Saxby's testimony.

OCF's motion is denied. First, OCF has not included any evidence concerning Mr. Ames' position and responsibilities. Also, the transcript of Mr. Hazard's testimony has not been submitted. Absent a transcript the Court would be ruling in a vacuum. This the Court refuses to do. Such questions are better left to the trial judge. OCF's argument concerning the "admissibility" of the Saranac documents, seems to focus on the significance of such documents with respect to defendant's knowledge of the dangers of asbestos, a issue related to the summary judgment motion. The excerpted portions of the Saranac documents would seem to be probative of the requisite mental state. The trial judge will be able to fully pass on the documents when they are properly introduced. Finally, this Court previously ruled that Mr.

# header

Saxby's trial testimony in a related asbestos case constituted an admission pursuant to Fed.R.Evid. 801(d)(2)(A). This Court stated that any other legitimate objections concerning Saxby's testimony should be presented to the trial judge.

## IV. PLAINTIFF'S MOTION TO COMPEL THE PRODUCTION OF INFORMATION CONCERNING VARIOUS DEFENDANTS' NET WORTH.

Plaintiff has moved for an order compelling the Celotex Corp., Owens Illinois, Inc., Pittsburgh Corning Corp., and OCF to produce information regarding their current worth at the time of trial. As the plaintiffs may proceed with their claims for punitive damages and as the defendants' net worth would be a material factor in determining the amount, if any, of punitive damages, plaintiffs' motion is granted. After the jury has been impaneled and the opening statements have been completed, defendants shall turn over to the plaintiffs information concerning their net worth.

An appropriate order follows.

### ORDER

AND NOW, this 19th day of December, 1986, it is hereby Ordered that:

1. Defendant OCF's summary judgment motion is DENIED.

2. Defendant OCF's *in limine* motion is DENIED.

3. Plaintiff motion to compel the production of information concerning the net worth of the Celotex Corp., Pittsburgh Corning Corp., Owens Illinois, Inc., and OCF is GRANTED. Said information shall be turned over to plaintiffs after the jury is impanelled and the opening statements completed.

AND IT IS SO ORDERED.

### ON MOTION FOR RECONSIDERATION

AND NOW, on this 3rd day of March, 1987, it is hereby Ordered that defendant Owens-Corning Fiberglass Corporation's motion for reconsideration of this Court's December 19, 1986, Memorandum and Order is DENIED. Defendant's motion concerned the court's ruling on the summary judgment motion and not the *in limine* motion. I again have reviewed thoroughly the applicable case law and the evidentiary record. I remain convinced that the original order which denied defendant's summary judgment motion was proper and completely justified by the evidence. *See* Plaintiff's exhibits B, especially paragraph 3; C, especially paragraph 3; D; E, especially paragraph 2 and 7; G, especially part C entitled "Conclusion"; H; I; K; and L; *see also* Defendant's exhibits A, Ames deposition at 27–35; B, Hazard deposition at 36–42, 46–51, 70–1; C, Saxby deposition at 26–34 45–47.

AND IT IS SO ORDERED.