John SMITH, et al.

v.

The SOUTHLAND CORPORATION.

Civ. A. No. 89–1763.

United States District Court,
E.D. Pennsylvania.

June 8, 1990.

John G. Malone, Philadelphia, Pa., for plaintiffs.

Kim R. Plouffe, Philadelphia, Pa., for The Southland Corp. of Texas, The Southland Corp., Harbison Dairies, The Southland Corp. a/ka Harbisons Embassy Dairy, Inc., Ballard Sales Co., Inc., Harbisons-Embassy Dairy.

## MEMORANDUM

LOUIS H. POLLAK, District Judge.

In this diversity action, plaintiffs, John and Eileen Smith, seek recovery for an alleged work related injury sustained by Mr. Smith in the summer of 1987. In the complaint the Smiths allege that Mr. Smith, a business invitee of the defendants, The Southland Corporation of Texas and Harbison's Dairies, injured his back when he slipped and fell while loading a dairy truck owned and controlled by defendants. In the original complaint, plaintiffs sought compensatory damages for negligence; after having been given leave to amend the complaint, plaintiffs have added a claim for punitive damages, pursuant to new allegations of reckless indifference on defendants' part.

Currently before the court are defendants' motion for partial summary judgment on the issue of punitive damages, and plaintiffs' motion in limine to exclude evidence of Mr. Smith's alcohol and drug

abuse. For the reasons stated below, both of these motions shall be denied.

### Summary Judgment

When seeking leave to amend the complaint to add the claim for punitive damages, plaintiffs argued:

2. The incident and injuries to John Smith were caused by defendants' refusal to clean the wet, dirty and slippery condition of the floors inside defendants' trucks (including truck no. 389 the truck in which John Smith was injured) before defendants had their trucks loaded by workmen, such as John Smith.

3. Defendants' [sic] knew that the wet and slippery condition of their trucks posed a high degree of chance of serious bodily harm to the workmen charged with the responsibility of loading defendants' trucks. However, defendants refused to make their trucks safe despite repeated pleas from the workmen.

Motion to Amend, p. 1. Although I noted that "[e]stablishing entitlement to punitive damages is a difficult matter," pursuant to the liberal amendment standards established by the Supreme Court in *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), plaintiffs were allowed to amend the complaint over defendants' objections of futility and untimeliness.

When contesting plaintiffs' proposed amendment, defendants' futility argument was that the record, as it then stood, did not support the requirements of Pennsylvania common law; that argument, now supported by the complete record upon discovery, is revisited in this motion for partial summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

■ Pennsylvania has adopted § 908(2) of the Restatement (Second) of Torts. *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742, 747 (1984). As that section is con-

strued by the Pennsylvania courts, for plaintiffs to prevail they must show that the failure of these defendants to make their trucks safe as alleged in the complaint, was "intentional, reckless or malicious." Response to Motion to Amend, p. 6, quoting *Feld, supra,* 485 A.2d at 748. As explained in *Smith v. Brown,* 283 Pa. Super. 116, 423 A.2d 743, 745 (1980):

Wanton misconduct means that "the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm will follow."

quoting *Evans v. Philadelphia Transportation Co.,* 418 Pa. 567, 212 A.2d 440, 443 (1965). Section 500 of the Restatement, also adopted by the Pennsylvania courts, further provides:

The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

*Id.,* as quoted in *Stubbs v. Frazer,* 308 Pa.Super. 257, 454 A.2d 119, 120–121 (1982); *see also Martin v. Johns–Manville Corp.,* 508 Pa. 154, 494 A.2d 1088 (1985).[1]

■ Defendants do not argue that the record is insufficient to create a genuine issue, pursuant to Rule 56(c), of whether the defendants knew of the risk as required by Pennsylvania law. Instead, assuming *arguendo* that the defendants knew or had reason to know of the risk

---

**1.** *Martin* represents the Pennsylvania Supreme Court's most recent statement of the standard for awarding punitive damages. The opinion of the court was joined in by only two of the six justices considering the case, with four justices concurring in the result. I agree with Judge Newcomer's conclusion in *Ivins v. Celotex Corp.,*

115 F.R.D. 159, 164–165 (E.D.Pa.1986) that, because of the divisiveness of the court, *Martin* cannot fairly be read as a "definitive statement of the requisite mental state for punitive damages." *Id.* However, in this case *Martin,* as well as the older Pennsylvania cases cited in *Ivins,* apply.

created by the dirty floors, defendants argue that:

> None of the alleged omissions of defendants could be said to constitute reckless indifference to the rights of Mr. Smith and conscious action in deliberate disregard of those rights. At worst, the alleged omissions of defendant would amount to no more than mere negligence.

Motion for Summary Judgement (hereinafter "Motion"), pp. 8–9. Defendants contend that, when read in the light most favorable to plaintiffs, the record indicates that the defendants had a policy of having the trucks professionally cleaned on a weekly basis, and that special arrangements were made to clean trucks on an as-needed basis. Motion, p. 3, and Exhibit "E", p. 25. In addition drivers would wash the interiors when needed (Exhibit "E", p. 25), and loaders were expected to clean up spills they made. Exhibit "B", p. 163. According to defendants, with this policy in place, Mr. Smith was not subject to the unreasonable risk required for an award of punitive damages:

> There is also no evidence that defendants had created a high degree of risk to Mr. Smith and then deliberately failed to act in conscious disregard of or indifference to that risk. A jury may ultimately conclude that the steps taken by defendants to keep the floor of the truck clean were inadequate or not reasonable or that the cleaning should have been performed on a more frequent basis. Such omissions, if proven, constitute nothing more than mere negligence.

Motion, p. 11.

Since, in defendants' view, the principle of punitive damages is to punish "a defendant [who] has callously created a [sic] extremely hazardous condition or allowed such condition to exist *unbeknownst* to a third party" (Motion, p. 9, emphasis in original), defendants further assert that punitive damages are inappropriate in this case, where it is clear that Mr. Smith was aware of the danger of slippery floors, yet took no steps to alleviate that danger.

In rebuttal, plaintiffs argue:

> Defendant [sic] knew that the interior [of] its trucks were not cleaned on a routine basis because they were usually filled with crates of products. Any claim that defendant ever cared to clean out its trucks for the safety of the workers who loaded them would be a falsehood.

> In addition, John, who had to load many refrigerated trucks a day, was not able to make the metal floors of the defendant's [sic] trucks safe. Even if John had the time to wash the defendant's trucks, as suggested by defendant in its memorandum, John would have had to wait several hours for the metal truck floors to dry in their refrigerated environment. John did not have such time.

Response, pp. 6–7. Thus, the basis of plaintiffs punitive damages claim is that (1) the policy which defendants relied upon was inadequate; (2) defendants *knew* of the inadequacy of the policy for a significant period pre-dating Mr. Smith's accident; and (3) no reasonable opportunity existed for Mr. Smith to prevent the accident. In plaintiffs' view, these circumstances, about which there are material facts in issue, are sufficient to defeat defendants' partial summary judgment motion.

Upon a review of the record, I conclude that summary judgment would be inappropriate in this case. The question of the reasonableness of defendants' policy and the associated risk, if any, Mr. Smith was exposed to because of that policy, is a question appropriately addressed to the jury. *Stubbs v. Frazer, supra,* 454 A.2d at 121. So too is the question of Mr. Smith's continuing to load the truck in light of his perception of that risk. 42 Pa.C.S.A. § 7102. Accordingly, defendants' motion for partial summary judgment will be denied in an accompanying order.

### *Motion in Limine*

█ Plaintiffs have moved to prevent defendants from presenting any evidence of Mr. Smith's problems with alcoholism and drug use. From the record, it appears that Mr. Smith first suffered from alcoholism until four years prior to the accident. At that time he participated in a program, and,

**926**

according to the record, successfully controlled his intake of alcohol until the accident. Subsequent to his injury, it appears that Mr. Smith again began to drink, consuming on average a case of beer over a weekend and a six-pack of beer daily during the week. He did not tell the doctors treating him for his back injury that he was drinking that quantity of alcohol on a regular basis. Reply, Exhibit "B". In March of 1989 Mr. Smith was seriously injured as a result of an automobile accident; after his hospitalization, Mr. Smith was arrested for driving under the influence, after a blood test was performed which determined that, at the time of the accident, Mr. Smith's blood alcohol level was more than three times that allowed by law.

Defendants do not intend to introduce this evidence on the issue of liability, but rather to rebut plaintiffs' claims for lost earning capacity. Response to Motion in Limine, ¶ 11. Plaintiffs assert that:

> [there is] no evidence that John's prior condition regarding to [sic] use of alcohol has had any effect on John's life expectancy and/or work life expectancy. Therefore, evidence of alcohol consumption by John Smith would be nothing more than groundless conjecture having no probative value. Federal Rule of Evidence 401. To the contrary, John's prior state of health was excellent. Attached and marked Exhibit "C" is a letter from John's personal family physician stating that John's prior state of health [sic].

Reply, p. 2.

In my view, Mr. Smith's drinking habits are relevant to a jury's consideration of this case. It appears that both plaintiffs and defendants intend to rely on mortality tables with respect to Mr. Smith's claim for loss of earnings capacity; as noted in *Helm v. Eagle Downs–Keystone Racetrack*, 385 Pa.Super. 550, 561 A.2d 812 (1989), mortality tables are admissible for that purpose. In conjunction with the use of mortality tables, individual characteristics including

the prior health and personal habits of a plaintiff *must* be considered by a jury before coming to a dollar figure on damages. *Id.* Thus, Mr. Smith's drinking habits are indeed relevant to a jury's consideration of the mortality tables,[2] and defendants are entitled to introduce evidence of Mr. Smith's alcoholism for the limited purposes for which it is offered.

*Conclusion*

An order reflecting these determinations accompanies this memorandum.

ORDER

For the reasons stated in the accompanying memorandum, it is hereby ORDERED that:

(1) defendants' motion for partial summary judgment is DENIED; and

(2) plaintiffs' motion in limine to exclude evidence of plaintiff John Smith's alcohol abuse is DENIED.

---

**2.** This evidence is also relevant to rebut the expected expert testimony regarding the extent of Mr. Smith's injuries; the relevance is highlighted by Mr. Smith's admission that he did not tell his treating physicians, some of whom are expected to testify about Mr. Smith's alleged diminished work capacity, of his high alcoholic consumption during the course of his treatment.