Nina S. JONES and Ronnie J. Jones, Plaintiffs,

v.

McDONALD'S CORPORATION, AGA Corporation and Stephen J. Arnold, Defendants.

Civ. A. No. 96–CV–4350.

United States District Court, E.D. Pennsylvania.

April 10, 1997.

Joseph F. Roda, Roda & Nast, P.C., Lancaster, PA, for plaintiffs.

Mark T. Riley, Marshall, Dennehey, Warner Coleman and Goggin, Lancaster, PA, for defendants.

## MEMORANDUM

JOYNER, District Judge.

In this diversity action, Plaintiffs Nina S. Jones and her husband Ronnie J. Jones seek compensatory and punitive damages for injuries allegedly sustained when Mrs. Jones slipped and fell in the parking lot of a McDonald's restaurant. Before the Court is Defendants' Motion for Partial Summary Judgment on the Issue of Punitive Damages. For the following reasons, the Motion is granted.

## BACKGROUND

This lawsuit concerns an alleged slip and fall on November 25, 1995 at a McDonald's restaurant in Gap, Pennsylvania (the "Restaurant").[1] Plaintiffs claim that Mrs. Jones injured her left foot, ankle and knee when she slipped on oil and grease while walking across the exit lane of the "drive-thru." Defendants are the Restaurant's franchisees, Stephen J. Arnold and the AGA Corporation

---

1. Throughout this recitation of the facts, we will cite to the depositions of the following individuals: Defendant Stephen J. Arnold; Cathi Jayne Weimer, the "Swing Manager" at the Restaurant at all times relevant to this action; Gary W. Schultz, the Restaurant's "Store Manager" at all times relevant to this action; Heather E. Kellon, who has worked in the Restaurant's "drive-thru" for three years; George F. Gregg, a maintenance man at the Restaurant for over two years; and Valerie Martin, a "Crew Trainer" at all times relevant to this action.

(collectively "AGA"),[2] and its franchisor, the McDonald's Corporation ("McDonald's"). Plaintiffs' original Complaint sought compensatory damages and damages for loss of consortium for Defendants' alleged negligence. On December 31, 1996, Plaintiffs moved for leave to amend a claim for punitive damages, which leave was granted on January 23, 1997. Defendants now move for summary judgment on this claim.

The facts relevant to the instant Motion, viewed in the light most favorable to Plaintiffs and with every reasonable inference drawn in their favor, are as follows. McDonald's, which requires AGA to offer "drive-thru" service at the Restaurant, designed the Restaurant such that patrons must cross the exit lane of the drive-thru when walking from their cars to the entrance. Arnold Dep. at 27–28; Expert Report of Richard T. Hughes, P.E. at unnumbered page 4. Grease and oil accumulate in the drive-thru lane. Weimer Dep. at 14–16; Schultz Dep. at 38. Grease and oil also accumulate in the area of the parking lot where, pursuant to McDonald's policy, patrons are directed to park their cars when their drive-thru orders are not immediately ready. Weimer Dep. at 28. This area extends from one to three car lengths in front of the second drive-thru window. Martin Dep. at 6; Schultz Dep. at 37. On a given day, as many as thirty (30) percent of the 600 to 750 cars that use the drive-thru service at the Restaurant each day may be required to wait in this location. Schultz Dep. at 37; Kellon Dep. at 6.

McDonald's supplies its franchisees with a Maintenance Manual ("Manual") which contains instructions on how to "degrease" the parking lot. Pls.' Opp. to Mot. Ex. 1. The instructions are to apply a cleaning solution to the affected area, allow the solution to soak for at least three hours, and then rinse the solution off the pavement with water. Manual at 9–28 to 9–30. McDonald's instructs franchisees to do this on a regular basis, but only when the temperature is above 40°F. *Id.* at 9–29 to 9–30. Cold temperatures reduce the power of the cleaning

solvent, and the solution and the water used to rinse it can freeze. *Id.* at 9–30; Gregg Dep. at 10; Schultz Dep. at 53. During cold weather, franchisees are instructed to "take advantage of brief periods above freezing" and "scrub with a stiff brush ... instead of allowing the cleaner to soak for the recommended minimum of three hours." Manual at 9–30.

AGA follows these instructions. AGA degreases the parking lot on no less than a weekly basis during the warmer months of the year. Gregg Dep. at 9; Schultz Dep. at 52–53. During the colder months, however, the lot is degreased less frequently, and only when the weather permits. Gregg Dep. at 11; Schultz Dep. at 54. During the months of November through February, pursuant to the Manual, AGA's employees sweep the lot on days when "it warms up in the afternoon." Gregg Dep. at 11. AGA continues to offer drive-thru service, however, during these periods of cold weather.

Mrs. Jones slipped and fell during one of these "cold" months in the part of the parking lot where drive-thru patrons wait when their orders are not immediately ready. Plaintiffs therefore claim that her injuries resulted from Defendants' allegedly outrageous, reckless decision to continue to offer drive-thru service while not regularly degreasing the parking lot.

## DISCUSSION

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Our responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. *Williams v. Borough of West Chester,* 891

---

2. Arnold was the sole owner of AGA at all times relevant to this action. Arnold Dep. at 5. We will therefore refer jointly to Arnold and AGA as "AGA."

F.2d 458, 460 (3d Cir.1989) (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510). Rather, we will grant summary judgment unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. at 2514. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

Defendants move for summary judgment on the grounds that there is no evidence suggesting that they possessed the requisite state of mind for punitive damages. Rather, the evidence demonstrates that the parking lot was degreased no less than weekly most of the year and, during the colder months, as often as the weather permitted. Further, nothing in the record before the Court indicates that a single AGA or McDonald's employee was aware of a condition in the Restaurant's parking lot creating a high degree of risk of physical harm to patrons.

Plaintiffs respond that factual issues exists concerning punitive damages because the record shows that "Defendants required patrons entering their restaurant to walk across an area that Defendants knew was prone to a heavy build-up of oil and grease.... [which], if not removed, presented a danger to patrons, and needed to be cleaned on daily basis to protect patrons." Pls.'s Mem. at 3. By continuing "to operate the drive-thru without reduction" during cold weather when they "intentionally stopped the regular cleanup of that oil and grease," Defendants' made an "economically-driven choice to expose another person to a known risk of physical harm [,which] is precisely the type of wrong for which Pennsylvania courts have held punitive damages appropriate." *Id.* at 3, 5.

■ Pennsylvania has adopted Restatement (Second) of Torts § 908(2), which provides that "punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Feld v. Merriam*, 506 Pa. 383, 485 A.2d 742, 747 (1984). As the Superior Court recently explained, "[n]either mere negligence, nor even gross negligence, shows sufficient culpability to justify a punitive damages award. Rather, 'punitive damages are proper when a person's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct.'" *Takes v. Metropolitan Edison Co.*, 440 Pa.Super. 101, 655 A.2d 138, 146 (1995) (quoting *SHV Coal v. Continental Grain Co.*, 526 Pa. 489, 587 A.2d 702, 704 (1991)) (citations omitted), *app. granted in part*, 544 Pa. 595, 679 A.2d 225 (1996). Conduct is sufficiently reckless to warrant punitive damages only when "a defendant knows, or has reason to know, of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act in conscious disregard of, or indifference to that risk." *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 751 (3d Cir.1994) (explaining *Martin v. Johns–Manville Corp.*, 508 Pa. 154, 494 A.2d 1088 (1985) (plurality opinion)). The defendant's state of mind is thus relevant to this determination. *Rizzo v. Haines*, 520 Pa. 484, 555 A.2d 58, 69 (1989).

■ We conclude after a thorough review of the record that no reasonable jury could award Plaintiffs punitive damages based on the evidence before the Court. First, we agree with Defendants that there is no evidence creating a factual issue as to whether Defendants knew that the spot where Mrs. Jones allegedly slipped and fell "was prone to a heavy build-up of oil and grease." Though AGA and McDonald's employees clearly were aware that oil and grease accumulated in the parking lot, no statement suggests that Defendants knew that the area where Mrs. Jones fell was especially grease-ridden. In fact, the only pertinent statements in the

depositions are directly to the contrary.[3] Moreover, even if Plaintiffs' could point to such a statement, there is still nothing to indicate that Defendants knew such grease and oil "if not removed, presented a danger to patrons, and needed to be cleaned on daily basis to protect patrons." Pls.' Mem. at 3. Indeed, even during warmer months, the lot was generally degreased on a weekly basis, and Plaintiffs have submitted no evidence indicating that this practice was insufficient.

■ Plaintiffs rely on deposition testimony that suggests that as many as 200 to 250 cars per day stopped for varying lengths of time in the general area that Mrs. Jones fell. We may reasonably infer from such evidence that oil and grease spills were more common in this area than in other areas of the lot that saw less traffic. This inference tends to prove at most, however, that Defendants *should have known*—or that a reasonable person in their shoes would know—that patrons had a greater risk of slipping on oil or grease in this part of the lot than in others. In Pennsylvania, punitive damages may not be imposed on a defendant for a risk of which he should have been aware, but failed to appreciate. *SHV*, 587 A.2d at 704–05 (quoting *Martin*, 494 A.2d at 1097). In *Martin*, a plurality of the Pennsylvania Supreme Court distinguished between two types of reckless conduct defined in Restatement (Second) of Torts § 500:

(1) where the 'actor knows, or has reason to know, ... of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk;' and (2) where the 'actor has such knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable person in his position would do so.'

*Id.* The plurality stated that "only the first type of reckless conduct ... is sufficient to create a jury question on the issue of punitive damages" because " 'indifference' to a known risk ... is closer to an intentional act than the failure to appreciate the degree of risk from a known danger." *Id.; see also SHV*, 587 A.2d at 704 (quoting same); *Field v. Philadelphia Elec. Co.*, 388 Pa.Super. 400, 565 A.2d 1170, 1182 (1989) ("If the defendant actually does not realize the high degree of risk involved, even though a reasonable man in his position would, the mental state required for the imposition of punitive damages in Pennsylvania is not present."); *Polselli*, 23 F.3d at 751. In this case, Defendants may have unreasonably failed to appreciate the risk created by continuing to offer drive-thru service when it was too cold to degrease the lot regularly. Plaintiffs point to no evidence, however, suggesting that Defendants were aware of any such risk, much less a high degree of risk, and acted in spite of it.[4]

---

3. An example is the following exchange between Plaintiffs' counsel and Ms. Weimer:

Q Do you recall where most of the incidents happened, in other words, where the grease and oil mostly built up that you'd ask your crew members to scrub?
A Are you asking me if there is particular [sic] area that was on a consistent basis?
Q Yes.
A No.

Weimer Dep. at 15–16. Also illuminating is this exchange between Plaintiffs' counsel and Mr. Gregg:

Q So an hour to an hour and a half a day.... you're out there scrubbing oil?
A Yeah....
Q How do you know where to scrub?
A Well I look myself, and unless somebody does say there's grease out there....
Q Okay. Have you noticed, during this time, that it tends to build up in any specific areas?
A I don't think so.

Gregg. Dep. at 6–7.

4. The two cases Plaintiffs cite in opposition to Defendants' Motion are not persuasive. In *Gray v. H.C. Duke & Sons, Inc.*, 387 Pa.Super. 95, 563 A.2d 1201 (1989), *app. denied*, 525 Pa. 583, 575 A.2d 114, 525 Pa. 583, 575 A.2d 114, 525 Pa. 584, 575 A.2d 114, 525 Pa. 584, 575 A.2d 114 (1990), a products liability case, the court found evidence warranting submission of the issue of punitive damages to the jury where the defendant had been warned by its chief engineer that its product was hazardous but refused to take precautionary measures despite the warning. Thus, there was plainly evidence of conscious disregard in *Gray* not present in the instant case.

On the other hand, we agree with Plaintiffs that summary judgment on the issue of punitive damages was denied in *Smith v. Southland Corp.*, 738 F.Supp. 923 (E.D.Pa.1990), based on similar facts. The holding in *Smith* was premised on the conclusion, however, that *"Martin* cannot fairly be read as a 'definite statement of the requisite mental state for punitive damages' " because the opinion of the court was joined by two justices,

In sum, we conclude that the record is devoid of evidence that Defendants intentionally, willfully, wantonly or recklessly caused harm to Mrs. Jones. Plaintiffs' punitive damages claim therefore fails as a matter of law. An appropriate Order follows.

## ORDER

AND NOW, this 10th day of April, 1997, upon consideration of Defendants' Motion for Partial Summary Judgment on the Issue of Punitive Damages (Document No. 19), and Plaintiffs' response thereto, it is hereby ORDERED that the Motion is GRANTED. Summary judgment is hereby ENTERED in favor of Defendants on Plaintiffs' claim for punitive damages.

with four justices concurring in the result only. *Id.* at 924 n. 1 (quoting *Ivins v. Celotex Corp.,* 115 F.R.D. 159, 164–65 (E.D.Pa.1986)). A majority of the court has since adopted the relevant portion of the *Martin* plurality opinion, *see SHV,* 587 A.2d at 704–05, thus *Smith* is not persuasive.