578 A.2d 634

Hector LABRADOR, Administrator, of the Estate
of Ismael Labrador,

v.

CITY OF PHILADELPHIA and Vidal Guadalaupe.

Appeal of CITY OF PHILADELPHIA, Appellant.

Hector LABRADOR, Administrator, of the Estate of Ismael
Labrador, Deceased, Appellant,

v.

CITY OF PHILADELPHIA and Vidal Guadalaupe, Appellees.

Commonwealth Court of Pennsylvania.

Argued May 4, 1990.
Decided Aug. 15, 1990.

428

---

Jack J.C. Herzig, Asst. City Sol., with him, Charisse R. Lillie, City Sol., Norma Weaver, Chief Deputy City Sol., and Miriam B. Brenaman, Divisional Deputy for Appeals, for appellant/appellee, City of Philadelphia.

John J. Fonash, III, Steinberg & Girsh, P.C., for appellee/appellant, Hector Labrador.

Before PALLADINO and McGINLEY (P.), JJ., and BARRY, Senior Judge.

PALLADINO, Judge.

In these consolidated appeals, the City of Philadelphia (City) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) denying the City's motion for a new trial, and Hector Labrador (Appellant), administrator of the Estate of Ismael Labrador (Decedent), appeals from an order of the trial court denying Appellant's request for attorneys fees and costs under the Pennsylvania No-fault Motor Vehicle Insurance Act (Act).[1] We affirm.

On October 3, 1982, Decedent, a victim of a heart attack, was being transported to the hospital in a police car, which was involved in an accident with another vehicle before reaching the hospital. Approximately five hours later, Decedent died at the hospital. An autopsy was performed by the medical examiner, who concluded that the cause of death was arteriosclerotic heart disease.

On March 16, 1984, Appellant filed a survival and wrongful death action against the City, claiming damages as well as interest, attorney's fees and costs under the Act. Appellant filed a motion in limine to prevent the introduction of any evidence relating to the use of alcohol by Decedent and to the fact that Decedent suffered from cirrhosis of the liver. This motion was granted. A jury trial resulted in a verdict in favor of Appellant and against the City. Appellant filed a motion to mold the verdict requesting that benefits under the Act[2] be added to the jury's verdict. The trial court granted the motion as to interest on wage loss and funeral costs, but denied attorney's fees and litigation costs. The City filed a motion for a new trial alleging that

---

1. Act of July 19, 1974, P.L. 489, *formerly* 40 P.S. §§ 1009.101–1009.701, repealed by the Act of February 12, 1984, P.L. 26. Reference to the Act throughout this opinion shall be to the sections of the Act and shall not include the former Purdon's citations.

2. The parties stipulated at the beginning of the trial that benefits under the Act were dependent upon a favorable verdict in the negligence action, and that any issue relating to such benefits would not be presented to the jury during the trial.

the trial court erred in granting the motion in limine and excluding (1) reference in the Kensington Hospital records that Decedent was "a known alcoholic," and (2) the finding of the medical examiner contained in the autopsy report that Decedent suffered from cirrhosis of the liver. The trial court denied the motion for a new trial. These appeals followed.

Two issues are raised by these appeals: (1) did the trial court err in excluding the introduction of evidence that Decedent suffered from cirrhosis of the liver; and (2) did the trial court err by not awarding attorney's fees and litigation costs to Appellant.

Our scope of review of post-trial motions is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Sacco v. City of Scranton,* 115 Pa.Commonwealth Ct. 512, 540 A.2d 1370 (1988).

On the evidentiary issue, the City argues that the trial court erred in excluding references to Decedent's cirrhosis of the liver, because cirrhosis necessarily tends to shorten one's life expectancy, a factor the jury must consider to establish the correct measure of damages. In its offer of proof, the City indicated that no expert testimony was available to support its proposition that cirrhosis of the liver limits life expectancy. It merely offered to introduce a reference in Decedent's medical records relating to alcoholism and a reference in the autopsy report relating to cirrhosis. The City contends that the trial court should have taken judicial notice of the harmful effects of cirrhosis of the liver upon Decedent's health, because these adverse effects are within the common knowledge of a juror, and as a result, no expert testimony is necessary on this issue.

The Appellant argues that there is no authority for the proposition that cirrhosis of the liver necessarily shortens one's life expectancy; nor is such a fact within the common knowledge of a juror. Accordingly, Appellant argues, the

trial court neither erred nor abused its discretion by excluding the references to alcoholism and cirrhosis of the liver.[3]

Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal unless there is a clear abuse of discretion. *Schnitzer v. Commonwealth*, 85 Pa.Commonwealth Ct. 38, 480 A.2d 388 (1984). An abuse of discretion is not merely an error of judgment but rather a judgment which is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the record. *Allegheny West Civic Council, Inc. v. City Council of Pittsburgh*, 86 Pa.Commonwealth Ct. 308, 314, 484 A.2d 863, 866 (1984).

■ We conclude that the trial court did not abuse its discretion by excluding the evidence of Appellant's alleged alcoholism and cirrhosis of the liver. As noted by the trial court:

> In the present case, decedent suffered from various diseases, including coronary disease, cirrhosis and emphysema. It would be improper to permit a jury to speculate as to the likely effect of one of these diseases, cirrhosis, on decedent's life expectancy in the absence of expert testimony.
>
> . . . .
>
> Furthermore, cirrhosis of the liver carries with it the implication of alcohol indulgence. Many misconceptions exist concerning cirrhosis and alcoholism. Not everyone

---

**3.** The City now also argues that excluded statements in the deposition testimony of Appellant's witness, Dr. Bendersky, established a connection between cirrhosis of the liver and life expectancy. Appellant's expert apparently linked cirrhosis and decreased life expectancy in the following exchange:

Q. And the ailments [emphysema, cirrhosis of the liver and coronary disease], Doctor, would affect one's life expectancy?
A. They can, yes.

Deposition of Gordon Bendersky, M.D. at 33. This testimony was apparently excised from the videotape deposition before it was shown to the jury. This argument has no merit because the City never called Dr. Bendersky as a witness.

who suffers from cirrhosis is an alcoholic, and, as defendant City has conceded, no expert testimony could be offered to prove the cause of decedent's cirrhosis....Therefore, the dubious relevance of this information is also outweighed by the prejudicial effect to the plaintiff.

*Labrador v. City of Philadelphia,* (No 2997 March Term, 1984, filed September 19, 1989), slip op. at 5–6. This discussion clearly indicates that the trial court seriously considered all of the arguments made by the parties before making its decision and based its opinion on sound reasoning. Accordingly, we affirm the order of the trial court denying a new trial.

On the issue of attorney's fees and costs, we must turn to the language of the Act. Three sections are relevant to our discussion. Section 106(a)(5), relating to the payment of claims, reads as follows:

An obligor who rejects a claim for basic loss benefits shall give to the claimant *written notice of the rejection promptly, but in no event more than thirty days after the receipt of reasonable proof of the loss.* Such notice shall specify the reason for such rejection and inform the claimant of the terms and conditions of his right to obtain an attorney. If a claim is rejected for a reason other than that the person is not entitled to basic loss benefits claimed, the written notice shall inform the claimant that he may file his claim with the assigned claims bureau and shall give the name and address of the bureau. (Emphasis added.)

The remaining two sections, sections 107(1) and 107(3), which deal specifically with the payment of attorney's fees read as follows:

(1) If any overdue no-fault benefits are paid by the obligor after receipt by the obligor of notice of representation of a claimant in connection with a claim or action for the payment of no-fault benefits, a reasonable attorney's fee (based on actual time expended) shall be paid by the obligor to such attorney. No part of the attorney's fee

for representing the claimant in connection with such claim or action for no-fault benefits shall be charged or deducted from benefits otherwise due to such claimant and no part of such benefits may be applied to such fee.

. . . .

(3) If, in any action by a claimant to recover no-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended.

Appellant argues that benefits are due under both section 107(1) and 107(3) of the Act. Under section 107(1), Appellant argues, there is no reasonableness standard applicable—if the benefits are delayed, attorney's fees must be awarded by the trial court. The City argues that section 107(1) is not applicable in cases where benefits have been denied by the insurer,[4] as occurred in this action. Furthermore, the City argues that Appellant did not provide reasonable proof of loss prior to the filing of a notice of representation, nor did Appellant's counsel enter an appearance after the payments were overdue. Accordingly, the City alleges that the prerequisites of section 107(1) have not been met.

Under section 107(3) Appellant argues that because the City had not obtained any expert evidence for more than six years to support its denial of benefits, the denial was unreasonable, and attorney's fees and costs must be awarded. Appellant argues that the reasonableness of the denial must be measured at the time the denial occurred, not at the time of trial. The City argues that it had a reasonable basis to deny the claim because there was a question whether the Decedent suffered an "injury" which resulted in death, or whether the Decedent died merely of natural causes, as stated on the autopsy report. Accordingly, the

4. The City was self-insured.

City alleges that the autopsy report provided a reasonable basis to deny the claim.

In interpreting the Act, we are bound by the tenets of statutory construction set forth in the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991. Of particular relevance to this matter are the requirements that a statute be construed to give effect to all of its provisions, 1 Pa.C.S. § 1921(a), when the words of the statute are free from ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing the spirit of the statute, 1 Pa.C.S. § 1921(b), and all penal provisions of a statute are to be strictly construed. 1 Pa.C.S. § 1928(b)(1).

■ Based upon these tenets, we conclude that section 107(1) is applicable only in those cases where a written denial is not provided to the claimant as provided by section 106(a)(5). If no denial is issued, the claimant must show that he has provided reasonable proof of loss, and that the notice of representation was filed after the benefits were overdue. Only then will section 107(1) be applicable. *See Lee v. Safeguard Mutual Insurance Co.*, 379 Pa.Superior Ct. 104, 549 A.2d 927 (1988).

■ If however, a denial, as required by section 106(a)(5) is issued, section 107(3) is the applicable section. It is then the trial court's responsibility to determine whether there was a reasonable foundation for the denial of benefits. This reasonable basis must be determined based upon evidence available at the time the benefits were denied, and not on what is shown at trial.

■ Appellant · provided no evidence that a denial, as required by section 106(a)(5), was not provided in this matter, but rather implies that such a denial was issued. Accordingly, Appellant failed to meet his burden of proof that he is entitled to benefits under section 107(1). As for the applicability of section 107(3), the trial court found a reasonable basis for the denial of benefits. While it is unclear as to what evidence the trial court based this determination,

we conclude that the autopsy report provides a reasonable foundation for the denial of benefits.

Accordingly, we affirm the order of the trial court.

## ORDER

AND NOW, August 15, 1990, the orders of the Court of Common Pleas of Philadelphia County in the above-captioned matters are affirmed.