**Louis AIELLO**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 10, 1996.

Decided Dec. 13, 1996.

Reargument Denied Feb. 5, 1997.

Joan A. Zubras, Philadelphia, for appellant.

Tina Marcy Weber, Philadelphia, for appellee.

Before DOYLE and FLAHERTY, JJ., and KELTON, Senior Judge.

FLAHERTY, Judge.

Southeastern Pennsylvania Transportation Authority (SEPTA) appeals from an order of the Court of Common Pleas of Philadelphia County (trial court) which awarded damages to Louis Aiello (Aiello), after a jury found SEPTA guilty of negligently maintaining a subway stairway, causing Aiello to fall and injure himself.

Aiello alleged that, on April 18, 1991, a defective steel plate connected to a damaged concrete step caused him to slip and fall on a stairway located at the Walnut/Locust Street subway stop in Philadelphia. Notwithstanding the fall, Aiello boarded the subway train but later collapsed at the Snyder Avenue station when he attempted to exit the train.[1] Both Philadelphia and SEPTA police responded to the situation and subsequently transported Aiello to Methodist Hospital where he was treated.

As a result of the fall, Aiello suffered a tibial plateau fracture of his left leg, which required surgery, as well as other injuries to his left knee and foot. At the time of trial, Aiello did not have complete use of his leg and needed a cane to walk. Aiello had Human Immunodeficiency Virus (HIV) infection

since 1986, and AIDS–Related Complex (ARC) symptoms at the time of this accident.

Aiello filed a premises liability action against SEPTA. The case was originally heard by an arbitration panel which found in favor of Aiello and awarded damages in the amount of $50,000. SEPTA appealed the panel's decision. Aiello was a few days less than 36 years old at the de novo trial in which the jury returned a verdict in favor of Aiello in the amount of $933,160, less 30% contributory negligence assigned to Aiello, for a total award of $653,212. The trial court subsequently modified the award to $250,000, pursuant to the statutory cap under 42 Pa. C.S. § 8521, and additionally granted Aiello's request for delay damages in the amount of $124,110.27, for a total award of $374,110.27. SEPTA's post-trial motions were denied and this appeal followed.

On appeal, SEPTA raises the following issues: (1) whether the trial court abused its discretion in prohibiting SEPTA from calling a witness who had previously been precluded by the discovery judge from testifying; (2) whether the trial court abused its discretion by permitting an expert to testify for Aiello whose medical report was not disclosed before trial; (3) whether the trial court erred in admitting photographs taken of the scene of the accident when the photographer had died before trial; (4) whether counsel improperly summarized in her closing statement Aiello's testimony regarding counsel's alleged error in drafting the situs of the accident in the original complaint; and (5) whether the trial court erred in excluding evidence as to plaintiff's HIV and ARC illnesses.[2]

SEPTA initially asserts that the trial court erred in prohibiting Officer Warren, a SEPTA police officer, from testifying at trial. Aiello allegedly stated to Warren that he fell

---

1. In his original complaint, Aiello stated that the defective step upon which he fell was located at the Lombard/South Street station (R.R. 494) but subsequently, a stipulation dated February 4, 1993, was entered into in lieu of an amended complaint, to reflect that the Walnut/Locust Street station was the alleged situs of the accident. SEPTA agreed only to the filing without objection, not the content, since the statute of limitations had not run. (R.R. 806–807.)

2. Our scope of review over rulings on the admissibility of evidence is to determine whether the trial court abused its discretion in deciding to admit or exclude the evidence in question. *DeVita v. Durst*, 167 Pa.Cmwlth. 105, 647 A.2d 636, 640 (1994), *petition for allowance of appeal denied*, 540 Pa. 606, 655 A.2d 993 (1995).

at the Snyder Avenue station. During the discovery period, SEPTA failed to comply with a court order to disclose to Aiello that Officer Warren was a prospective defense witness. On May 11, 1992, Judge Eugene Maier, who was assigned to discovery matters, ordered SEPTA to release all discoverable items, to make full and complete production of all requested documents, and to provide answers to plaintiff's interrogatories within twenty days. (R.R. 718.) SEPTA failed to disclose Officer Warren as a witness until the week before trial, over 2–1/2 years after it was due. Based on SEPTA's failure to comply with his previously entered order, Judge Maier, in a subsequent order dated December 9, 1994, specifically precluded the testimony of Officer Warren. (R.R. 718.)

The trial court properly gave effect to Judge Maier's discovery orders. Pursuant to Pa. R.C.P. No. 4019(a)(1)(viii), the court may enter an appropriate order if a party "fails to make discovery or to obey an order of court respecting discovery." Because of SEPTA's failure to comply with his May, 1994, discovery order, Judge Maier specifically precluded the testimony of Officer Warren in accordance with Pa. R.C.P. No. 4019(c)(2), which prohibits the disobedient party from introducing designated documents, things or testimony. SEPTA's clear disobedience of Judge Maier's May, 1994 order, and its apparent bad faith by not disclosing witnesses at a suitable time before trial, clearly justify the trial court's preclusion of Officer Warren's testimony despite SEPTA's protestations to the contrary. *Gill v. McGraw Electric Co.*, 264 Pa. Superior Ct. 368, 399 A.2d 1095 (1979).

SEPTA next contends that Dr. Frank Montique, Aiello's medical witness, should not have been allowed to testify because neither Dr. Montique's identity, nor the substance of his testimony, had been disclosed to SEPTA in response to its interrogatories. Aiello did state in his answers that *treating* physicians would be called at trial and subsequently identified Dr. Montique as an expert witness in a letter delivered to SEPTA on November 29, 1994, sixteen days before trial.

It is well established that the admission of expert testimony is a matter of discretion of the trial court and will not be disturbed unless there was a clear abuse of discretion. *Kubit v. Russ*, 287 Pa. Superior Ct. 28, 429 A.2d 703 (1981). To determine whether to allow the testimony of a witness who had not been included in a pre-trial memorandum, the presiding court must balance the facts and circumstances of each case to determine the prejudice to each party. *Feingold v. Southeastern Pennsylvania Transportation Authority*, 512 Pa. 567, 517 A.2d 1270 (1986).

The trial court determined that there was no resulting prejudice or unfairness to SEPTA by allowing Dr. Montique to testify. SEPTA knew of the witness sixteen days before the start of the trial, even before the case was assigned to the trial court. In fact, SEPTA had several opportunities to preclude Dr. Montique's testimony or to seek a continuance before trial but chose to remain silent, to not take any affirmative steps to compel, preclude or continue and to gamble on waiting until trial time to force preclusion of his testimony. First, SEPTA could have filed an immediate objection with the discovery court before trial seeking to preclude Dr. Montique's testimony when it was notified of his identity and curriculum vitae as an expert witness. SEPTA had ample opportunity to secure a protective order, just as Aiello did with Officer Warren. Second, SEPTA could also have motioned for a continuance on December 12, 1994, while before the calendar judge on other matters in this case. Instead of seeking a continuance, which would have given SEPTA the opportunity to depose Dr. Montique, SEPTA strategically sought to preclude Dr. Montique's testimony by a motion in limine at the start of the trial.[3] Accordingly, any claim now by SEPTA that Dr. Montique was a surprise witness is not valid

---

3. When asked why SEPTA did not seek a continuance before Judge Moss, who assigned the case to the trial judge, counsel for SEPTA answered: Because I thought I had a better shot at getting him (Dr. Montique) precluded than if I ask for a continuance. Then I get the right to depose a gentleman who is going to come and say he never saw him. (R. 11.)

because SEPTA had an opportunity to depose Dr. Montique or to make other necessary pre-trial preparations before Dr. Montique took the stand. The judge, the jury and the courtroom were committed for this trial before SEPTA moved for preclusion. Although SEPTA complains of disparate treatment of Dr. Montique vis-a-vis Warren by the trial court, the inaction of SEPTA before trial distinguishes the ruling allowing Dr. Montique's testimony from the court's ruling on Warren which was based on an order of the discovery judge, timely obtained by Aiello and then disobeyed by SEPTA. We find no abuse of discretion by the trial court by allowing Dr. Montique to testify.

SEPTA additionally argues that the admission of numerous photographs of different staircases at the Walnut/Locust station which were taken by Aiello's friend was prejudicial to SEPTA and an abuse of discretion by the trial court. The general rule is that it is within the sound discretion of the trial court judge to determine whether photographs will be admitted into evidence. *DiBuono v. A. Barletta & Sons, Inc.*, 127 Pa. Cmwlth. 1, 560 A.2d 893 (1989). A photograph must be verified either by the testimony of the person who took it, or by another person with sufficient knowledge to state that it fairly and accurately represents the object or place reproduced as it existed at the time of the accident, or if there is a difference or change, the difference or change is specifically pointed out and is readily capable of being clearly understood and appreciated by the jury. *Semet v. Andorra Nurseries, Inc.*, 421 Pa. 484, 219 A.2d 357 (1966).

At trial, Aiello testified that the photos accurately depicted the scene of the incident except that there were three steel plates on the steps on the day he fell which were not present in the photos admitted, including the defective steel plate which caused his fall as it existed on the day of the accident. (R.R. 162–163.) Furthermore, Aiello was able to identify the date that the photos were taken (R.R. 284), he was able to identify and describe the staircase upon which he fell (R.R. 158), and he was able to identify the removal of the steel plates on the steps and to identi-

fy the exact step upon which he fell. (R.R. 159, 161, 163–164.) Because Aiello authenticated the photos, the trial court did not abuse its discretion by admitting them.

SEPTA also contends that Aiello's counsel testified improperly during summation by stating that she, as counsel, not the plaintiff, made the mistake regarding the location of the accident. Specifically, SEPTA argues that the statement was intentionally made during closing argument to deny SEPTA the opportunity to cross-examine counsel.

Aiello testified, however, that he was initially unaware that his counsel had misidentified the location of the incident in Aiello's original complaint and in his answers to interrogatories because he signed the verification but did not read beyond the paragraphs therein that stated his name and address. (R.R. 494.) Aiello testified about the error, the circumstances surrounding it, including his attorney's mistake and identified the correct location of the accident. (R.R. 308–310.) Because Aiello testified that the error was made by his counsel (R.R. 311), Aiello's testimony became a credibility issue which counsel for both parties properly argued, and which was evaluated by the jury. *Leibowitz v. Ortho Pharmaceutical Corp.*, 224 Pa. Superior Ct. 418, 307 A.2d 449 (1973). In her closing argument, Aiello's counsel merely addressed evidence which had been testified to and placed into evidence at trial by her client. The trial court did not abuse its discretion in overruling the objection of SEPTA's counsel to that part of the summation of plaintiff's counsel.

Furthermore, SEPTA only objected to counsel's statement on the ground that counsel was testifying in her closing statement. (R.R. 414.) SEPTA did not inform the trial court that its objection was based upon its inability to cross-examine counsel. A party complaining on appeal of the admission of evidence objected to in the court below will be limited to the specific objection made at trial. *Risbon v. Cottom*, 387 Pa. 155, 127 A.2d 101 (1956). Accordingly, SEPTA's argument that it was denied the opportunity to cross-examine counsel was not

properly preserved for appeal and therefore has been waived.

Finally, SEPTA contends that the trial court erred in granting Aiello's motion in limine to exclude all evidence and cross-examination about and relating to Aiello's HIV and ARC conditions. The trial court held that (1) Aiello's medical condition was protected by the Confidentiality of HIV–Related Information Act (Act),[4] (2) the evidence of the HIV and ARC conditions did not fit within the compelling need exception of the Act and (3) Aiello avoided presenting any evidence on the issue of future wage loss and normal life expectancy.

The trial court assumed the Act was passed because of "the highly prejudicial nature of HIV and AIDS disclosure."[5] In fact, the stated purpose of the Act was clearly limited to *promoting* voluntary confidential *blood testing* to limit the spread of the Acquired Immune Deficiency Syndrome (AIDS). 35 P.S. § 7602. In the interest of furthering public health by promoting testing to *encourage those in need* to get tested and, hopefully, to obtain counseling and to protect health care providers and responding police, fire, etc. who frequently come into contact with such blood. 35 P.S. § 7602(b). The Act assures that information gained *as a result of HIV testing* will remain confidential. 35 P.S. § 7602(c). The Act, nevertheless, still provides for the disclosure of confidential HIV-related information if the person seeking to disclose the information has a compelling need to do so. 35 P.S. § 7608(a)(2). *In re Application of M.S. Hershey Medical Center,* 407 Pa. Superior Ct. 565, 595 A.2d 1290 (1991).

The Act was passed with the express intent to promote high-risk people to get tested for HIV and ARC. Aiello had been tested over four years before the Act was passed and already knew he had HIV long before the statute was enacted.

SEPTA contends that proof of Aiello's HIV condition, which existed since 1986, was relevant not only to his physical condition before the accident but to the probability that Aiello would ever submit to such future operation and to the length of time he would have pain, suffering and inconvenience, loss of wages and medical bills in the future as a result of his present condition and the possible future operation.

Aiello admits that evidence of his HIV infection was relevant but basically contends that the trial court acted properly in balancing the probative value against the prejudicial impact and argues, in the alternative, that even if the probative value outweighed the prejudicial impact, because no life expectancy evidence, e.g., tables, expert testimony, etc., was introduced by Aiello, any conclusion that the jury based its verdict on the normal life expectancy for a 36–year old male was speculative. (Appellee' Brief, p. 6.)

Here, Aiello did not seek the protection of the statute during discovery when SEPTA subpoenaed his medical records. The medical records contained numerous references to HIV and ARC and other medical terms in relation to Aiello's condition, such as, the AZT medicine for it and Klonopin and Prozal medications which are used to reduce the nausea and other effects resulting from ingesting the AZT.[6]

■ We disagree with the trial court's exclusion of evidence of Aiello's AIDS-related condition for three reasons: (1) the evidence was admittedly relevant (Appellee's Brief, p. 6); (2) Aiello waived any privilege of common law or statutory confidentiality protection by filing and pursuing a lawsuit which included claims for future damages resulting from evidence and closing remarks presented to emphasize his past work history, the condition of his health at the time of the accident and the certain need for a future operation to replace his knee, and medical expenses, lost wages and pain and suffering resulting from that operation; and (3) SEPTA demonstrated a compelling need for such disclosure under Section 7608(a)(2) of the Act, 35 P.S. § 7608(a)(2).

---

**4.** Act of November 29, 1990, P.L. 585, *as amended,* 35 P.S. § 7601–7612, effective February 27, 1991.

**5.** Trial court opinion, p. 3.

**6.** (R. 504, 508, 512, 516, 524, 550, 558, 559.)

By making a claim for personal injuries, an individual must expect reasonable inquiry and investigation to be made of his claim and, to that extent, the individual's privacy interest is circumscribed. *Forster v. Manchester*, 410 Pa. 192, 189 A.2d 147 (1963). When a party places his physical condition at issue, the privacy right against disclosing private medical information is usually waived. *Moses v. McWilliams*, 379 Pa. Superior Ct. 150, 549 A.2d 950 (1988), *petition for allowance of appeal denied*, 521 Pa. 631, 558 A.2d 532 (1989). Both *Forster* and *Moses* were decided under the common law before the Act took effect, however.

Aiello filed a complaint alleging and, at trial, was still seeking, damages for past and future pain and suffering (R.R. 494), loss of earnings, medical expenses, etc. Because Aiello sought future damages, the trial judge instructed the jury to consider the possibility of future damages (R.R. 464–465), thereby making Aiello's life expectancy and medical condition pertinent issues regardless of Aiello's avoiding the introduction of life expectancy tables or expert testimony.

Dr. Montique testified, over objection, on behalf of Aiello as an orthopedic surgeon who had reviewed Aiello's medical records but had never seen him until he met him in the hallway outside the courtroom where he examined him for about ten minutes. He testified unequivocally that the prognosis was poor and that patients with Aiello's knee problem tend to require a total knee replacement in the future which would require hospitalization. (R. 113–117.)

Aiello himself also clearly made his physical condition before his accident a key issue when he testified (after knowing the trial judge had ruled against the introduction of any evidence of HIV or ARC):

Q. Mr. Aiello, what was your general medical condition as far as you felt before this accident?

A. Before the accident, physically

Q. Yes.

A. Fine ... I did exercise, et cetera, roller skated, I worked and everything. My physical condition was very good. I was very fit and healthy.

(R. 294.) [7] Further, Aiello's counsel in her closing argument stated that Dr. Montique told the jury that Aiello had:

"[A] permanent injury to his left leg (R. 386) ... more likely than not need a total knee replacement and [Dr. Montique] told you that's going to mean an additional hospitalization, more medical bills and my client told you pain and suffering again. (R. 387–88.) He is going to have to in the future—this is a certainty ... this man is going to have his knee replaced ... He has got to go through this all over again (R. 387–88) this is how he is going to be for the rest of his days .... and he is a young man. He is 36 Monday (R. 412) ... [k]eep in the back of your mind the amounts of my client's medical bills as well as any future pain or medical bills he may incur, his lost wages, his future wages, and more importantly, the mental and physical pain...." (R.419)

Because counsel for Aiello, after obtaining the protection in limine against disclosure of the effect of HIV on Aiello's past, present and future medical condition, was then permitted to pursue, with abandon, claims that he was physically fit and healthy at the time of the accident, emphasizing his age, youth and permanent injury claims, a future operation and damages therefrom, we believe that the probative value of the HIV and ARC conditions was caused to exceed its prejudicial effect and that Aiello thereby waived any protection of confidentiality and created a compelling need for disclosure by SEPTA.

While Dr. Montique was permitted to testify about permanence after reviewing the medical records which contained many references to HIV and ARC, he never testified about their effect because SEPTA's counsel was not permitted to cross-examine or inquire into the effects of HIV and ARC by the

---

7. Also see R. 211 where Aiello, on direct examination, also testified that his life had done a full turnabout since his accident, that he was very active before, very energetic, very physically minded, went to the gym, did aerobics, etc., whereas after the accident all he did was sit on his step wondering how he could support himself and became depressed, his self worth went away and, when he heard Dr. Montique in court say his prognosis was poor, he became devastated.

court's prohibition of HIV and ARC disclosures.[8]

Although the trial judge states in his opinion that Aiello avoided presenting any evidence on the issue of future wage loss and normal life expectancy, he still charged as follows: "Whether the accident has caused him to lose money *in the future* that's entirely up to you ... he is entitled to be reimbursed for any physical pain, mental anguish, inconvenience, stress, and loss of life's pleasures and any he may endure in the past and *in the future ....*" (R. 465, emphasis added.) In effect, the distorted case of a seriously injured 36–year old male who represented that he was previously healthy and physically fit with no evidence permitted that could challenge such claims or show an expectation of less than a normal life span was being sent out to a jury to determine not only past, but *future,* damages after the plaintiff knew from an in limine ruling before trial that no evidence of HIV would be permitted from the defendant. Aiello not only was permitted to conceal, but was possibly permitted to misrepresent, his physical condition before the accident to the jury and then seriously pursue future damages for a permanent injury and a future operation with attendant damages while the defendant after numerous objections was forced to sit in court with a gag order without the ability to reveal the truth to the jury. Such unfairness cannot be sanctioned in the name of prejudice to the jury. Such strangulation of the truth cannot be countenanced. The prejudicial effect of the HIV and ARC concealment must also be balanced by the prejudicial effect of presenting a false picture of plaintiff's past, present and future medical condition to the jury when the plaintiff has voluntarily chosen to insert these issues into the case.

Unfortunately, there are few cases on point regarding the issue of excluding evidence of HIV and ARC diseases of a personal injury plaintiff during trial.

The Superior Court of Pennsylvania, after weighing the competing interests under the Act, decided that a compelling need existed which allowed a hospital to notify patients that one of its doctors who performed surgery on them had tested positive for the HIV virus. *Hershey.*

The Wisconsin Court of Appeals allowed a doctor being sued for malpractice to introduce evidence that his patient was HIV positive because the trial court correctly determined that the prejudicial effect of this information was outweighed by its probative value on the issue of damages and the condition of the plaintiff. *Doe v. Roe,* 151 Wis.2d 366, 444 N.W.2d 437 (App.1989).

Both parties cite *Agosto v. Trusswal Systems Corp.,* 142 F.R.D. 118 (E.D.Pa.1992), which, however, does not provide any authority for the admissibility of HIV type evidence at trial, but only during discovery. The court in *Agosto* held that plaintiff waived the confidentiality of the Act "if plaintiff decides to continue pressing his future pain and suffering and lost earning capacity claims" and granted defendant's motion to compel discovery of plaintiff's HIV-related condition in a products liability case. The court's reasoning in *Agosto* is significant, however, in balancing the facts that plaintiff voluntarily chose to bring a personal injury suit, voluntarily made claims for future pain, suffering, and lost earning capacity and thereby not only waived his privilege of confidentiality during discovery, but also entitled defendant to disclosure of any HIV-related condition because a compelling need for the information under Section 7608(c) of the Act was demonstrated by such claims. 142 F.R.D. at 120.

In accordance with Section 7608(c) of the Act, in assessing a compelling need, "the court shall weigh the need for disclosure against the privacy interest of the individual and the public interests which may be harmed by the disclosure." 35 P.S. § 7608(c). As Aiello voluntarily brought suit and voluntarily brought claims that made his

---

**8.** SEPTA's counsel indicated a desire to cross-examine Dr. Montique on HIV, ARC, its impact, if any on the healing time, the amount of time until the operation would be likely, whether or

not Aiello would still be alive at that time or in a physical condition which would warrant or tolerate such an operation and the anticipated projection of the progression of the disease.

past, present and future quality of life, loss of wages and medical condition extremely relevant issues, SEPTA's interest in providing an adequate defense against these claims at trial demonstrates a compelling need within the definition of Section 7608(c) for SEPTA to disclose the HIV and ARC information to the jury under Section 7608(a)(2) of the Act.

The trial court erred in excluding information about Aiello's HIV and ARC conditions and status before and after his accident.

Accordingly, we affirm in part as to the liability issues but reverse the trial court's order with respect to the issue of damages as it was based upon the ruling that evidence concerning Aiello's HIV and ARC-related conditions was inadmissible. As such, we remand for a new trial limited to the issue of damages.

### ORDER

NOW, December 13, 1996, the order of the Court of Common Pleas of Philadelphia County denying Southeastern Pennsylvania Transportation Authority's motions for post-trial relief, dated April 20, 1995, is reversed, and this matter is remanded for a new trial limited to the issue of damages.

Jurisdiction relinquished.