# Dembinski v. Thomas

C.P. of Lehigh County, no. 96-C-3039V.

*Howard J. Levin,* for plaintiff.
*Sean M. Heart,* for defendant.

BLACK, *J.*, June 8, 2000—In this wrongful death and survival action, plaintiff has filed a motion in limine to preclude evidence of the decedent's alleged heroin usage, some six years prior to his death. Plaintiff contends that this evidence is not relevant, and that even if relevant, its prejudicial effect outweighs whatever probative value it may have. For the reasons set forth below, we disagree with plaintiff's contentions and find that this evidence is admissible.

## FACTUAL BACKGROUND

The factual background of this case is set forth in detail in our opinion of June 23, 1999, denying the summary judgment motion of defendant Marian Community Hospital. Suffice it to say now that the case arises from the death of Paul A. Dembinski on December 6, 1995, from a condition known as neuroleptic malignant syndrome. Plaintiff alleges that this condition was the result of an adverse reaction to Haldol, an anti-psychotic drug, initially administered to the decedent by defendant Alex Thomas M.D., while the decedent was an inmate at Lehigh County Prison. Plaintiff claims that Dr. Thomas and the various other defendants were grossly negligent either in administering this drug to the decedent or in failing to recognize and diagnose his adverse reaction after the drug had been administered.

Defendants have produced an expert report from a clinical psychiatrist, Joseph DiGiacomo M.D., on the issue of the standard of care. In his report, Dr. DiGiacomo summarizes and quotes from medical records of the CareUnit at Nesbitt Memorial Hospital from 1989, when the decedent was a detoxification patient at the facility. These records discuss the decedent's lengthy use

of heroin, alcohol and other controlled substances, which is described in Dr. DiGiacomo's report as follows:

"The drug history indicates Mr. Dembinski abused alcohol from age 16. He admitted to blackouts in the past. He also abused benzodiazepines, *i.e.,* Valium, up to 30-60 mg/day. He smoked marijuana. He abused narcotics including Percodan, Percocet and Tylox beginning at age 29. His main problem was I.V. heroin addiction. Three months prior to admission he began 'snorting, skin popping and for the last 8-10 weeks has been using daily I.V. 4-8 bags per day' supporting a $300/week habit." [1]

The report discusses the decedent's repeat visits to detoxification centers as follows:

"He had been in detox and rehab previously. 'In November 1986, . . . Went to Naples, Florida, . . . through a detox program and rehab program.' On January 26, 1999, the records indicate 'had previous treatment one year ago for 28 days and was clean for two months.' . . .

"Following his discharge from the CareUnit, he failed to follow up on any of the outpatient meetings, dealing with his addiction. He missed seven consecutive meetings and his 'case closed.' His prognosis was 'extremely poor.' " [2]

In addition to reviewing the 1989 hospital records, Dr. DiGiacomo's report also chronicles and evaluates the medical treatment rendered to the decedent in the weeks preceding his death.

Defendants also produced an expert report from Irene C. Mendelsohn M.S., C.R.C., a rehabilitation counselor,

---

1. Report letter of Joseph DiGiacomo M.D. 10/20/98 at 2-3, plaintiff's motion in limine to preclude evidence of alleged heroin addiction or usage, exhibit "A."

2. *Id.* at 3.

on the issue of the decedent's loss of future earnings. In her report, Ms. Mendelsohn identifies the decedent's prior drug use as a factor that affects negatively his life expectancy and future income capacity. She states:

"That brings up the issue of Mr. Dembinski's evident alcohol abuse problem, as well as his history of substance abuse. Mr. Dembinski's history makes it evident that these were not only recent but also recurrent problems for him—unfortunately, not an uncommon occurrence—and it is also well-known that those types of problems, coupled with the treatment involved, are usually disruptive factors in one's labor force participation. These factors had apparently already interrupted Mr. Dembinski's work history, and it is quite likely that they would have continued to do so in the future, absent his death.

"Therefore, in consideration of all of the information presently available and as discussed herein, please note my opinion that assumption and projection of a modest level of earnings (such as minimum wage) and concomitantly high proportion of personal maintenance expenses presents a far more realistic portrait of Mr. Dembinski's vocational outlook and earning potential than one of $26,000 annually with a much lower proportion of personal maintenance expenses. . . . [I]t is reasonable to suggest that, absent his death, Mr. Dembinski would have had only a low level of earnings, in fact, sufficiently low that his income level would not have significantly exceeded his level of maintenance expenses and he would have required the ongoing financial support of his parents."[3]

---

3. Report letter of Irene Mendelsohn 10/24/98 at 5, plaintiff's motion, exhibit "B."

## DISCUSSION

Plaintiff seeks to preclude all reference at trial to the decedent's drug and alcohol use, especially his use of heroin. We find, however, that this evidence is highly relevant, and that the probative value of this evidence clearly outweighs any unfair prejudice to plaintiff.

In reviewing the admissibility of evidence, a trial court must first determine if the proffered evidence is relevant. *Henery v. Shadle,* 443 Pa. Super. 331, 341-42, 661 A.2d 439, 444 (1995), *appeal denied,* 542 Pa. 670, 668 A.2d 1133 (1995). Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Pa.R.E. 401. As a general rule, "[a]ll relevant evidence is admissible. . . ." Pa.R.E. 402. Nevertheless, relevant evidence "may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403. If it is determined that the proffered evidence is relevant, the trial court must then "balance the probative value of evidence against the prejudicial effect of that evidence." *Clinton v. Giles,* 719 A.2d 314 (Pa. Super. 1998).

### Relevance

Dr. Thomas[4] maintains that evidence of the decedent's prior drug and alcohol use, including his heroin addiction, is highly relevant to determining the decedent's life

---

4. Dr. Thomas is the only defendant who responded to plaintiff's motion.

expectancy and future earning capacity, which the jury will be required to consider in evaluating plaintiff's damage claim. Dr. Thomas maintains that this evidence is also relevant to determining whether he violated the appropriate standard of care in administering Haldol to the decedent. We agree.

## Future Earnings

Our Superior Court has held that evidence of drug or alcohol use is relevant to evaluating future loss of earnings. *Kraus v. Taylor,* 710 A.2d 1142 (Pa. Super. 1998), *allocatur granted,* 556 Pa. 257, 727 A.2d 1109 (1999), *dismissed as improvidently granted,* 560 Pa. 220, 743 A.2d 451 (2000). Such evidence "strongly suggests that [a party's] life expectancy deviates from the average." 710 A.2d at 1144. This evidence is relevant regardless of whether plaintiff introduces expert testimony or life expectancy tables. See *Aiello v. SEPTA,* 687 A.2d 399, 405 (Pa. Commw. 1996), *allocatur granted,* 549 Pa. 608, 702 A.2d 547 (1997), *dismissed as improvidently granted,* 554 Pa. 244, 720 A.2d 1050 (1998), where the court wrote:

"Because [plaintiff] sought future damages . . . life expectancy and medical condition [are] pertinent issues regardless of [plaintiff's] avoiding the introduction of life expectancy tables or expert testimony."

In the instant case, the proffered evidence establishes that in 1989 the decedent had a long-standing addiction to multiple controlled substances, and that six years later, at the time of his death, he was still undergoing detoxification treatment. From this evidence, a jury could reasonably find a pattern in the decedent's lifestyle and fitness for work that would adversely affect his future life

expectancy and earning capacity. As in *Kraus,* the proffered evidence makes it more likely than not that the decedent would have had a below-average work-life expectancy and a below-average ability to maintain employment, both factors affecting plaintiff's claim for future loss of earnings. Accordingly, we find the evidence of the decedent's drug history to be highly relevant for evaluating his future income loss.

## Standard of Care

The proffered evidence is also relevant to the issue whether Dr. Thomas deviated from the appropriate standard of care. Plaintiff contends that Dr. Thomas was grossly negligent in administering additional Haldol to the decedent, despite symptoms of a negative reaction to the initial dosage. The evidence of the decedent's prior drug and alcohol use is relevant to this contention because, as Dr. DiGiacomo explains in his report letter, the symptoms displayed by the decedent at the Lehigh County Prison and afterwards were not necessarily a negative reaction to the Haldol, but could have been the natural, expected consequences of a person undergoing detoxification for long-standing multi-substance drug use. Dr. DiGiacomo states that these symptoms could be indicative of "intracerebral changes from the previous illicit drug use that could be exerting its effect."[5] He opines that these symptoms are suggestive of a lingering withdrawal from the decedent's prior multi-substance drug use.[6]

Dr. Thomas explained in his deposition that he relied upon the information in the 1989 hospital records about

5. DiGiacomo report at 5.
6. *Id.*

the decedent's drug history, particularly the decedent's long-standing use of multiple controlled substances, in evaluating the decedent's symptoms and in determining the appropriate treatment.[7] Therefore, this information is crucial to assessing whether Dr. Thomas deviated from the proper standard of care.

Plaintiff points out that a blood test ordered by Dr. Thomas on November 30, 1995, revealed that there was then no heroin in the decedent's system. Plaintiff contends, therefore, that the decedent's alleged use of heroin "was not a basis upon which the defendants themselves acted or treated the plaintiff's decedent, nor did it in any way cause or increase the risk of death."[8] However, this is a jury argument. It is not a basis for excluding evidence of the decedent's prior drug use. We believe a jury could find that the alleged drug addiction did limit the decedent's future earning capacity. We also believe that this evidence is relevant to the issue of Dr. Thomas' compliance with the standard of care.

### Probative Value vs. Prejudicial Effect

Having determined the proffered evidence to be relevant, we must next balance the probative value of this evidence against any prejudicial effect. In the context of evaluating relevant evidence, prejudice "means an undue tendency to suggest a decision on an improper basis." *Chicchi v. SEPTA,* 727 A.2d 604, 607 (Pa. Commw. 1999).

---

7. Deposition of Alex Thomas M.D. at 90, 92, memorandum of law in support of defendant's response to plaintiff's motion in limine to preclude evidence of decedent's heroin addiction, exhibit "B."

8. Plaintiff's motion, ¶32.

Whenever evidence of drug use is proffered, there is a significant concern that such evidence will cause unfair prejudice against the alleged drug user. See *Kraus v. Taylor,* 710 A.2d 1142, 1144 (Pa. Super. 1998) ("evidence of [party's] chronic drug and alcohol abuse was highly prejudicial"); see generally, *Commonwealth v. Satzberg,* 358 Pa. Super. 39, 48, 516 A.2d 758, 762 (1986) (finding defendant unduly prejudiced by prosecutor's comments on defendant's drug habits, because of stigma associated with drug use). Nevertheless, where the jury is required to assess future damages that, in part, depend on the life expectancy of a party, evidence of that party's drug use has been held admissible because such evidence is "highly probative of [the party's] life expectancy." *Kraus v. Taylor,* 710 A.2d at 1144.

In the instant case, as noted in Dr. Mendelsohn's report, the decedent's drug use justifies a downward deviation from the norm in both life expectancy and future income capacity. Precluding this evidence would give the jury a distorted view of the decedent's lifestyle and habits, which have a substantial bearing upon the damages claimed. Dr. Mendelsohn must be permitted to rely on the evidence of prior drug usage in assessing the life expectancy and future income capacity of the decedent. See *Capan v. Divine Providence Hospital,* 270 Pa. Super. 127, 410 A.2d 1282 (1979) (trial court properly excluded testimony of expert witness economist as to life expectancy and future earnings when the hypothetical question posed to the economist did not include record evidence that the plaintiff was a chronic alcoholic).

The evidence of the decedent's prior drug use is also of significant probative value regarding the standard of care. Dr. Thomas would be severely disadvantaged at

trial if he could not refer to the decedent's drug history in explaining the basis for his treatment decisions. As Dr. DiGiacomo explains in his report, the administration of Haldol by Dr. Thomas on November 30, 1995 and on December 1, 1995 "was on solid ground,"[9] because the decedent's symptoms were expected for an individual undergoing detoxification, who had such a lengthy history of multi-substance abuse. These symptoms did not necessarily demonstrate an adverse reaction to the initial administration of Haldol.

Thus, although evidence of drug use may be prejudicial, in this case the probative value of evidence of the decedent's drug history significantly outweighs any prejudice to plaintiff. It would be unfair to defendants to preclude this evidence.

Plaintiff argues that even if we admit evidence of drug and alcohol use, we should at least prohibit any specific reference to heroin. Plaintiff suggests that the witnesses be instructed to use a euphemism, such as a general reference to substance abuse, to avoid mentioning heroin by name. However, we believe this would unfairly handicap Dr. Thomas, against whom serious accusations of professional malfeasance have been made. In *Aiello, supra,* the Commonwealth Court held that the fact-finder was entitled to hear evidence of the plaintiff's HIV condition in a personal injury case where there was a claim for future damages. We find that the evidence of the decedent's drug use in this case, including his use of heroin, is much less prejudicial than the evidence of the plaintiff's HIV condition in *Aiello.*

---

9. DiGiacomo report at 5.

Moreover, in summarizing the hospital records, Dr. DiGiacomo refers by name not only to heroin, but to five other drugs that the decedent had been using in 1989 or earlier, including benzodiazepines (Valium), Percodan, Percocet, Tylox, and marijuana. If evidence is to be admitted that the decedent was using at least five controlled substances other than heroin, there seems little reason to preclude reference to heroin. When seen in the context of the overall extensive drug history of the decedent, the reference to heroin along with the other named substances is of little additional consequence.

Plaintiff relies on *Labrador v. City of Philadelphia,* 134 Pa. Commw. 427, 578 A.2d 634 (1990), but this reliance is misplaced. In *Labrador,* the Commonwealth Court upheld a trial court's determination that the defense could not present evidence of the decedent's cirrhosis of the liver in a wrongful death and survival action, in the absence of expert testimony linking cirrhosis with a diminished life expectancy. The defendant had argued that evidence of the decedent's cirrhosis was relevant because the disease would shorten one's life expectancy, but the defendant acknowledged that it had no expert testimony linking cirrhosis with a decreased life expectancy. The Commonwealth Court upheld the trial court's preclusion of the cirrhosis evidence because of the lack of such expert testimony. The trial court had also precluded evidence of the decedent's alcohol use, but the plaintiff did not include the alcohol preclusion issue in the appeal, so the Commonwealth Court never addressed that issue.

In *Kraus, supra,* the Superior Court distinguished the *Labrador* case, noting that the Commonwealth Court had only the issue of the cirrhosis evidence before it, inasmuch as the trial court's exclusion of alcohol evidence

was not appealed. The Superior Court stated that "nothing in *Labrador* suggests the Commonwealth Court would have affirmed the trial court if it had excluded competent evidence of the [plaintiff's] chronic alcohol abuse." *Kraus,* 710 A.2d 1142.

In *Kraus,* the Superior Court specifically addressed the admissibility of a plaintiff's drug and alcohol abuse in a personal injury case where there is a claim for future damages. The court held that although the evidence of drug and alcohol abuse was highly prejudicial to the plaintiff, the evidence was also highly probative because the "[e]vidence of [plaintiff's] chronic drug and alcohol abuse strongly suggests that his life expectancy deviates from the average." *Kraus,* 710 A.2d at 1144. The court ruled that the probative value of this evidence outweighed the prejudice and was therefore admissible.

We find the *Kraus* case to be controlling on the issue at hand. We also note that, although not binding upon this court, similar decisions have been reached in the United States District Court for the Eastern District of Pennsylvania, as well as other federal and state courts. See *e.g., Carroll v. Morgan,* 17 F.3d 787, 791 (5th Cir. 1994) (finding that records from alcohol and treatment center were admissible regarding causation and damages in a medical malpractice action); *Smith v. Southland Corp.,* 738 F. Supp. 923, 925-26 (E.D. Pa. 1990) (admitting evidence of plaintiff's drug and alcohol abuse to "rebut [his] claims for lost earning capacity"); *Johnson v. Lull Enterprises Inc.,* 663 So.2d 403, 409 (La.App. 3 Cir. 1995) (finding that the probative value of drug use evidence outweighed the prejudicial effect).

The instant case is an even more compelling one than *Kraus* for admissibility of the evidence. Here the evi-

dence of prior heroin use is probative not only of the damages claimed, but also of Dr. Thomas' compliance with the standard of care.

For these reasons, plaintiff's motion in limine is denied.

## ORDER

Now, June 8, 2000, upon consideration of plaintiff's motion in limine to preclude evidence of alleged heroin addiction or usage, after review of the parties' briefs, for the reasons set forth in the accompanying opinion, it is ordered that said motion be and hereby is denied.