J-A06009-18

NON-PRECEDENTIAL DECISION — SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| JAMES TEMPLE, ADMINISTRATOR FOR THE ESTATE OF ELMA B. TEMPLE, DECEASED, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PROVIDENCE CARE CENTER, LLC D/B/A PROVIDENCE CARE CENTER, | |
| Appellee | No. 87 WDA 2017 |

Appeal from the Order Entered December 14, 2016
In the Court of Common Pleas of Beaver County
Civil Division at No(s): 11726-2012

BEFORE:  BENDER, P.J.E., SHOGAN, J., and STRASSBURGER, J.*

MEMORANDUM BY BENDER, P.J.E.:                FILED JANUARY 05, 2021

Appellant, James Temple, administrator for the estate of Elma B. Temple, deceased, appeals from the trial court's order granting Appellee, Providence Care Center, LLC d/b/a Providence Care Center (referred to herein as "Providence"), a new trial as to both liability and compensatory damages. We previously affirmed, focusing our review on a few highly contested issues and determining that the trial court was able to sua sponte grant Providence a new trial. Upon review, our Supreme Court reversed our decision, concluding that the trial court did not invoke — and could not have invoked — its sua sponte power to declare a new trial based on those issues. It instead

_____

* Retired Senior Judge assigned to the Superior Court.

ascertained that the trial court granted a new trial based upon Providence's

unpreserved motions for a mistrial, which was legal error. Our Supreme Court

subsequently remanded the case back to us to examine other bases given by

the trial court for its grant of a new trial that we had not addressed in our

prior memorandum. After reviewing some of the other reasons given by the

trial court, we again affirm the trial court's decision to award a new trial on

liability and compensatory damages to Providence.

Our Supreme Court summarized the factual and procedural history of

this case as follows:

> In 2008, Elma Betty Temple ("Elma"), who suffered from Alzheimer's disease, became a resident of Providence Care Center, a nursing home located in Beaver Falls, Pennsylvania. Providence ... owned and operated the facility, while Grane Healthcare Company ("Grane") provided management services. On November 28, 2011, Elma, who was 81 years old at the time, fell while walking on a ramp. She suffered a fracture in her right humerus, a fracture in her right pelvis, and a laceration to her right elbow. Providence apparently was not supervising Elma at the time; the only witness to the incident, a hospice chaplain, was not a designated caregiver.
>
> On September 26, 2012, [Appellant], Elma's son, filed a complaint on Elma's behalf[1] against Providence and Grane, alleging negligence and corporate negligence, and sought punitive damages. [Appellant] alleged that Providence should have known that Elma required supervision, because of two previous falls in 2011. [Appellant] further claimed that the facility was understaffed, and that Providence failed to provide needed safety measures.

> [1] During the course of the litigation, Elma passed away. [Appellant] is now the administrator of Elma's estate.[1]
>
> In May 2016, the court of common pleas presided over an eight-day jury trial. During the trial, three issues arose that are pertinent for resolving the instant dispute: (1) the admission of evidence regarding alleged understaffing of the facility, (2) testimony pertaining to Providence's alleged "star rating,"[2] and (3) the propriety of [Appellant's] closing argument, as detailed below. At the close of [Appellant's] case, the trial court granted a motion for nonsuit as to Grane and dismissed Grane from the case. The trial court denied a motion for nonsuit as to Providence and denied a motion for a directed verdict on punitive damages.
>
> In the bifurcated trial, the jury first considered whether Providence was negligent, the amount of compensatory damages to award, and whether Providence was reckless. The jury found that Providence was both negligent and reckless, and awarded $2,000,000 in compensatory damages. The second phase of the trial was focused upon punitive damages. After deliberations in this phase, the jury awarded $250,000 in punitive damages.
>
> * * *
>
> After the jury announced its verdicts and awards, both [Appellant] and Providence filed post-trial motions, which the trial court

_____

[1] In light of Elma's passing, we order our Prothonotary's office to amend the caption to accord with the caption used by our Supreme Court, which reflects that Appellant is now the administrator of Elma's estate.

[2] The Court explained that the Centers for Medicare & Medicaid Services ("CMS") assess nursing homes and

> "created the Five-Star Quality Rating System to help consumers, their families, and caregivers compare nursing homes more easily and to help identify areas about which you may want to ask questions." A CMS-run website "features a quality rating system that gives each nursing home a rating of between 1 and 5 stars. Nursing homes with 5 stars are considered to have much above average quality and nursing homes with 1 star are considered to have quality much below average."

Temple Estate of Temple v. Providence Care Center, LLC, 233 A.3d 750, 754 n.3 (Pa. 2020) (hereinafter "Temple II") (internal citations omitted).

disposed of in two separate opinions. In an opinion dated December 13, 2016, the trial court responded to Providence's post-trial motions. First, the trial court granted Providence's motion for [judgment non obstante veredicto ("JNOV")] with regard to punitive damages, finding that [Appellant] had presented no evidence that could show that Providence's "conduct amounted to anything more than negligence."

Second, in a lengthy analysis, the trial court granted Providence's motion for a new trial with regard to negligence and compensatory damages. The trial court provided five reasons for granting a new trial: (1) the compensatory damages award was "so contrary to the evidence as to shock one's sense of justice..."; (2) [Appellant] did not support [his] understaffing claims with expert testimony, and the trial court "ha[d] no way to determine whether the jury found Providence to be negligent based on a lack of staffing or based on another allegation of negligence..."; (3) the trial court improperly instructed the jury on staffing and the possibility of Providence's reckless conduct...;[6] (4) the trial court improperly submitted the issue of punitive damages to the jury...;[7] and (5) the trial court admitted "improper prejudicial evidence...."

> [6] The trial court additionally found that it had improperly instructed the jury on corporate liability, but the court decided that this error was harmless.
>
> [7] The trial court's language with regard to this reason for granting a new trial was especially confusing. The trial court wrote that "[a] new trial is necessary because the question of punitive damages was improperly submitted to the jury." The court then wrote that, "[f]or the reasons we believe a [JNOV] is warranted on the issue of punitive damages, we also believe a new trial is warranted." The best interpretation of this portion of the opinion is that the trial court was granting a new trial on negligence and compensatory damages because the court submitted the punitive damages question to the jury, as the trial court had earlier in the opinion granted JNOV on the punitive damages question.

With regard to the fifth reason, the trial court highlighted the erroneous admission of evidence regarding six different issues, including the staffing, star rating, and closing argument controversies noted above. Notably, the trial court did not make any determination as to whether Providence waived entitlement

to a new trial based upon the star rating issue. And in response to [Appellant's] claim that Providence had waived the ability to ask for a new trial due to the prejudicial closing argument, the court wrote that Providence "timely objected ... at trial. ... Thus, [the remedy of asking for a new trial was] not waived by" Providence. The trial court concluded that "the cumulative effect of the errors in this trial ... produced something other than a just and fair result. For that reason, a new trial [wa]s warranted."[8]

[8] The trial court additionally denied Providence's request for remittitur, as it found the proper remedy to be a new trial.

After [Appellant] filed a timely appeal to the Superior Court, the trial court issued an opinion in accordance with Pa.R.A.P. 1925(a). As to the decision to grant a new trial on negligence and compensatory damages, the trial court wrote that "[t]he [c]ourt adequately addressed all issues in [its post-trial motions opinion], which will serve as its [Rule] 1925(a) [O]pinion on these issues." However, the trial court also stated that the December 13, 2016 post-trial motions opinion "did not give an overarching reason for its decision. ... [T]he [c]ourt note[d] that the main reason for ordering a new trial was not the substantial verdict, but the fact that the [c]ourt did not believe the trial was fair." In contrast to the post-trial motions opinion, the trial court explained that[,] "if this were a case of purely compensatory damages, [the trial court] likely would <u>not</u> have awarded a new trial. The main problem in this case was [Appellant's] counsel's failure to follow the rules, and his co-mingling of arguments regarding compensatory and punitive damages, despite the court's admonition against this." The court then described the same issues regarding the star rating and [Appellant's] closing argument. Based upon these two issues, the trial court came "simply [to] believe the trial was not fair," and "when a trial judge believes that the trial was not fair, that judge is obliged to correct it." Separate from this finding of unfairness, the trial court wrote that it "d[id] not believe the claim of inadequate staffing was properly supported by expert testimony." Seemingly referring to all three issues—star rating, closing arguments, and staffing—the trial court felt "compelled to order a new trial on both liability and damages." The trial court did not mention any of the other reasons[9] for granting [a] new trial that it described in its December 13, 2016 post-trial motions opinion.[10]

[9] The trial court apparently narrowed its focus to the star rating, closing arguments, and staffing issues on its own accord. In his Pa.R.A.P. 1925(b) statement, [Appellant]

- 5 -

wrote only that "[t]he trial court erred when it granted the post-trial motion of Providence ... and ordered a new trial as to both liability and damages on the claim of negligence."

[10] Additionally, in its Rule 1925(a) Opinion, the trial court: (1) defended its decision to grant nonsuit for Grane; (2) defended its rulings on other evidentiary issues; and (3) agreed that delay damages would be proper upon remand.

\* \* \*

In an unpublished memorandum, the Superior Court affirmed in part and reversed in part. The panel affirmed the trial court's decision to grant a new trial. The panel first noted that, "[b]ecause the trial court focuses on [the star rating and closing argument] incidents to demonstrate why it believed that the trial was unfair, [the panel] examine[d] each in turn to ascertain if they warrant a new trial." Temple v. Providence Care Ctr., LLC, 2018 WL 3358598, at *4 (Pa. Super. July 10, 2018) [(hereinafter "Temple I")].

First, on the star rating issue, the panel agreed with [Appellant] that Providence had not preserved its claim. See id. at *6 (noting "Providence's late objection and failure to request a mistrial"). However, the panel explained that these failures "cannot waive the trial court's power to sua sponte order a new trial." Id.; see also id. ("[W]e disagree with [Appellant] that Providence waived [the star rating issue] claim by not objecting immediately and asking for a mistrial."). In an extended footnote, the panel further explained that, "notwithstanding Providence's post-trial motions asking for a new trial, it is evident that the trial court felt compelled to grant a new trial independent of Providence's motions requesting such relief." For proof that the trial court had used its sua sponte authority, the panel cited the trial court's language that, "'when a trial judge believes that the trial was not fair, that judge is obliged to correct it.'" Additionally, the panel found that this sua sponte power applied in both criminal and civil trials. Finally, the panel distinguished our waiver jurisprudence announced in Tagnani v. Lew, ... 426 A.2d 595 ([Pa.] 1981), writing that Tagnani "involved only one error, and not the multiple errors the trial court points to in the case sub judice," and that this Court's decisions confirming the sua sponte power "post-date" Tagnani.

Next, the panel agreed with [Appellant] that "Providence did not request a mistrial immediately following [Appellant's] closing

argument." However, the panel once again found "that this omission d[id] not preclude the trial court from granting a new trial sua sponte." The Superior Court only mentioned the staffing issue in a footnote,[11] but concluded that "the trial court had a basis to believe that the trial was unfair, given the cumulative effect of [Appellant's] improper conduct, along with other errors that prejudiced Providence." The Superior Court did not analyze those "other issues" in terms of whether the trial court was using its sua sponte authority or whether preservation and waiver rules applied. In its final disposition, the Superior Court remanded the case for a new trial.[12]

> [11] The panel wrote that[ former Providence employee Katherine] McCombs'[s] testimony "was insufficient to establish ... understaffing," but the panel did not analyze the staffing claim in terms of waiver of a motion for a mistrial by Providence or the trial court's ability to grant a new trial sua sponte.

> [12] Not pertinent to this appeal, the panel made two additional rulings. First, the panel sustained the trial court's decision to grant JNOV on punitive damages. Second, the panel reversed the trial court's decision to grant the motion for nonsuit as to Grane and ordered that Grane be included in a new trial.

We granted [Appellant's] petition for allowance of appeal in order to decide the following question:

> Did the Superior Court disregard decades of controlling Supreme Court precedent by affirming the grant of a new trial based upon errors that were not preserved properly at the time of trial?

Temple v. Providence Care Ctr., LLC, 205 A.3d 312 ([Pa.] 2019) (per curiam).

Temple II, 233 A.3d at 753, 757-60 (some internal citations omitted; emphasis in original; some brackets added).

Upon its review, our Supreme Court discerned that Providence did not preserve its request for a mistrial based on the staffing, star rating, and closing argument issues, as Providence did not request a mistrial at any point

during the trial itself because of those issues. See id. at 763; see also id. at 760 (explaining that a party preserves a motion for mistrial by "mak[ing] a timely, specific objection at trial and rais[ing] the issue on post-trial motions") (citation omitted; brackets and emphasis in original). It then evaluated whether this Court erred in determining that the trial court used, or could have used, its sua sponte authority to grant a new trial because of the staffing, star rating, and closing argument issues. Id. at 764-68. The Court concluded that:

> There are instances in which a party detects, but fails to preserve, an error that could result in a mistrial. In today's decision, we again recognize that a trial court possesses the very limited and restrained authority to halt proceedings and compel them to begin anew based upon that unpreserved error. But in such a circumstance, a trial court may only use its sua sponte authority to grant a new trial where "exceedingly clear error" results in "manifest injustice," of a constitutional or structural nature. Ewing v. Tees, 1 Binn. 450, 455-56 (Pa. 1808) (opinion of Tilghman, C.J.) However, that is not what occurred here, and the Superior Court's conclusion must be reversed. Because Providence … did not preserve its request for a mistrial and because the trial court did not grant, and could not have granted, a new trial sua sponte based upon the unpreserved request for a mistrial, we reverse the Superior Court's order and remand for further proceedings.

Temple II, 233 A.3d at 752-53.

In remanding the case to us, our Supreme Court observed:

The trial court, responding to Providence's arguments that included "everything but the kitchen sink," gave a multitude of reasons in its December 13, 2016 Post-Trial Motions Opinion and Rule 1925(a) Opinion for granting a new trial. The Superior Court focused only upon the three issues outlined in this opinion because the trial court itself directed the focus to those three issues in the Rule 1925(a) Opinion. The Superior Court, though, failed to take into account the trial court's statement that the trial court

- 8 -

"adequately addressed all issues" in the December 13, 2016 Post-Trial Motions Opinion, "which ... serve[d] as its [Rule] 1925(a) [O]pinion on these issues." While the Superior Court noted that its affirmance was based upon "the cumulative effect of [Appellant's] improper conduct, along with other errors that prejudiced Providence," it did not analyze any of the other reasons for the trial court's grant of a new trial.

The "salutary purpose" of a Rule 1925(a) opinion is "to provide a sufficient foundation for ensuing appellate review." Commonwealth v. Hairston, ... 84 A.3d 657, 679 ([Pa.] 2014) (Saylor, J., concurring); see also Commonwealth v. Pate, ... 617 A.2d 754, 758-59 ([Pa. Super.] 1992) ("The purpose of the [Rule 1925(a) opinion] is two-fold. First, it gives the appellate court a reasoned basis for the trial court's disposition of the challenged orders. Second, it requires the judge to thoroughly consider his decision regarding the post-trial motions, in order to correct any problems that occurred at the trial level."). A trial court can use a Rule 1925(a) opinion expressly to amend or even supersede its rationale from an earlier opinion. See ... Rule 1925(a) Op.[, 3/8/17,] at 2 ("Although we stated in our [Post-Trial Motions] opinion that the verdict shocked the conscience of the [c]ourt, if this were a case of purely compensatory damages, we likely would <u>not</u> have awarded a new trial.") (emphasis in original). A Rule 1925(a) opinion, however, does not erase from existence the trial court's prior pronouncements on a topic when the Rule 1925(a) opinion does not give such direction. The continued relevance of an earlier opinion is especially salient when the trial court specifically has incorporated that prior opinion into the Rule 1925(a) opinion, as the trial court did here.

We agree with [Appellant] that the trial court's other reasons for granting a new trial "are not properly before the Court." Accordingly, on remand, the Superior Court shall consider the other bases for the trial court's grant of a new trial. In doing so, the Superior Court must again consider any possible waiver by either party, including in failing to preserve an issue at trial or in failing to note an adverse party's lack of preservation upon appeal. Therefore, we reverse the Superior Court and remand for further proceedings consistent with this opinion.

Temple II, 233 A.3d at 768-69 (some internal citations and footnote omitted;

emphasis in original).

Pursuant to our Supreme Court's instruction, we turn our attention back to this matter to consider the other bases for the trial court's grant of a new trial to Providence. At the outset, we acknowledge that,

> "[w]here the trial court articulates a single mistake (or a finite set of mistakes), the appellate court's review is limited in scope to the stated reason." Morrison v. Commonwealth, Dep't of Pub. Welfare, Office of Mental Health, … 646 A.2d 565, 571 ([Pa.] 1994). Conversely, "where the trial court leaves open the possibility that there were reasons to grant or deny a new trial other than those it expressly offered, or the trial court justifies its decision on the 'interests of justice,' an appellate court must apply a broad scope of review and affirm if it can glean any valid reason from the record." Harman [ex rel. Harman v. Borah], 756 A.2d [1116,] 1123-24 [(Pa. 2000)] (citing Morrison, 646 A.2d at 570).

Temple II, 233 A.3d at 764.

> Additionally, we recognize that,

> [i]n reviewing a trial court's decision to grant or deny a motion for a new trial, it is well-established law that, absent a clear abuse of discretion by the trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial. Moreover, a new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.

> … [W]e must first determine whether we agree with the trial court that a factual, legal or discretionary mistake was, or was not, made. If we agree with the trial court's determination that there were no prejudicial mistakes at trial, then the decision to deny a new trial must stand. If we discern that a mistake was made at trial, however, we must then determine whether the trial court abused its discretion in ruling on the motion for a new trial. A trial court abuses its discretion by rendering a judgment that is manifestly unreasonable, arbitrary or capricious, or has failed to apply the law, or was motivated by partiality, prejudice, bias or ill will.

*Atwell v. Beckwith Machinery Co.*, 872 A.2d 1216, 1221 (Pa. Super. 2005) (citation omitted).

In conducting our review, we rely on the briefs that the parties originally filed with this Court.[3] In Appellant's initial brief to this Court, he attacks the trial court's grant of a new trial to Providence due to the weight of the evidence, the star rating controversy, his closing argument, and the understaffing issue. See Appellant's Brief at 33-34. He does not address in the relevant argument section of his initial brief the trial court's other reasons for awarding a new trial, such as the court's determinations that the jury should not have been instructed regarding recklessness and that Appellant's expert — Nurse Charlotte Sheppard — provided unsupported testimony that Providence acted with "reckless disregard" for Elma's safety. In spite of Appellant's inattention to these issues, the trial court did in fact conclude that, "[b]ecause [it] wrongly allowed Nurse Sheppard to testify that [Providence's] conduct was reckless without proper support for this opinion, and because [it] allowed the issue of recklessness to go to the jury, [it] believe[s] a new trial is warranted." Trial Court Opinion and Order on Providence's Post-Trial Motion, 12/13/16, at 30. It further explained:

_____

[3] In a per curiam order, we denied Appellant's request to conduct further briefing on remand. We agree with Providence that Appellant "had an opportunity to fully brief all potentially relevant issues in both his initial and reply briefs. Thus, nothing further is needed or appropriate." Providence's Answer to Appellant's Application for Leave to Conduct Further Briefing on Remand, 9/19/20, at ¶ 5 (emphasis in original).

[Providence] argues that Nurse Sheppard should not have been permitted to testify that [Providence] acted with "reckless disregard" for [Elma's] safety. [The court] do[es] not believe that this opinion was impermissible merely because it was an opinion on the ultimate fact. Such opinion is permitted under Rule of Evidence 704. [See Pa.R.E. 704 ("An opinion is not objectionable just because it embraces an ultimate issue.").] The trial judge has discretion to admit or exclude an expert's opinion on an ultimate issue, depending on the probative value of the opinion versus its potential to cause confusion or prejudice.

After careful review of the testimony, however, [the court] agree[s] that Nurse Sheppard's opinion of "reckless disregard" was not supported by facts as required by Rule 705. [See Pa.R.E. 705 ("If an expert states an opinion[,] the expert must state the facts or data on which the opinion is based.").] Nurse Sheppard did not state the facts to support her opinion that [Providence's] conduct was more than ordinary negligence. Without this factual support, [the court] believe[s] her opinion concerning recklessness was improper.

Nurse Sheppard made no distinction for the jury between negligence and recklessness. This was an important difference and a matter that required expert testimony, because ... this was a professional negligence case, which requires a professional to explain the standard of care and why it was not met. The law recognizes a distinction between negligence, gross negligence and recklessness. Nurse Sheppard summarily concluded that the conduct amounted to "reckless disregard" for [Elma's] safety, but did not explain to the jury why it was more than just an ordinary breach of the professional duty of care for a nursing home. As such, [the court] believe[s] it was improper to allow her to give the opinion that the conduct was reckless.

Moreover, [the court] do[es] not believe the conduct in this case was anything more than ordinary negligence, as [it] originally thought going into the trial.

Id. at 29-30. In granting Providence a new trial, the trial court also stated that it agreed with Providence that "the jury was misled into awarding [Appellant] large amounts for items unsupported by the evidence[,]" id. at 36, and opined that it "did not believe the trial was fair." Rule 1925(a) Op. at

2; see also id. at 2-3 (indicating that the jury included damages for punishment in its $2 million verdict).

Despite Appellant's failure to mention these reasons for the new trial in its initial brief, Providence raises in its responsive brief that, in addition to the understaffing, star rating, and closing argument issues, "[a] new trial was also required because of the admission of unsupported testimony (and jury instruction) regarding 'reckless disregard.'" Providence's Brief at 39. Providence argues that "Nurse Sheppard did not state facts to support an opinion that the case involved anything more than ordinary negligence and made no distinction between negligence and recklessness." Id. at 39-40 (citation omitted). It also asserts that "the jury instruction regarding recklessness during the compensatory stage of trial based upon Nurse Sheppard's unsupported conclusion was similarly inappropriate." Id. at 40 (citation omitted). Providence claims that "[s]uch an instruction at the compensatory stage of trial invited the jury to punish Providence, which is not a function of compensatory damages. Providing this misleading instruction, which was in no way supported by the evidence and which clearly affected the jury's compensatory verdict, warrants a new trial." Id.

Appellant counters in his reply brief that there is plenty of evidence to support Nurse Sheppard's testimony regarding reckless disregard. He says that "[h]er opinion was based, in part, upon her finding that Elma was frequently left alone without any assistance or supervision when ambulating and transferring. It[ is] also based on [Providence's] repeated failure to

update Elma's care plan." Appellant's Reply Brief at 26 (citations omitted). Appellant therefore contends that, "[w]ith or without Nurse Sheppard's testimony, these facts demonstrate recklessness." Id. at 27. Moreover, he insists that, "[a]s for the claim that Nurse Sheppard somehow usurped the 'function of the jury' with her opinion, both lay and expert witnesses are permitted to give opinions that embrace an 'ultimate issue.'" Id. (citations omitted). He further argues that "the court explained to the jury that they were not bound to accept any of the expert testimony[,]" and that "the jury was free to reject Nurse Sheppard's opinion." Id. at 28.[4]

Appellant's argument lacks merit. In Temple I, we affirmed the trial court's grant of JNOV on punitive damages, agreeing with the trial court that Appellant proffered insufficient evidence to demonstrate any recklessness by Providence. Temple I, 2018 WL 3358598, at *9-13. In reaching that conclusion, we discussed how "punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless

_____

[4] Notably, Appellant does not contend that Providence waived its arguments pertaining to the impropriety of Nurse Sheppard's reckless disregard testimony and the trial court's jury instruction on recklessness. Consequently, we do not consider any possible waiver of these issues further. See Commonwealth v. Hakala, 900 A.2d 404, 407 (Pa. Super. 2006) (noting that "[i]t is the [a]ppellant who has the burden of establishing his entitlement to relief by showing that the ruling of the trial court is erroneous under the evidence or the law[,]" and that "[i]t is not this Court's function or duty to become an advocate for the appellants") (citations omitted; some brackets added); Coulter v. Ramsden, 94 A.3d 1080, 1088 (Pa. Super. 2014) ("This Court will not act as counsel and will not develop arguments on behalf of an appellant.") (citations omitted); see also Commonwealth v. Williams, 141 A.3d 440, 464 n.23 (Pa. 2016) (deeming a waiver argument waived).

indifference to the rights of others." Id. at *9 (citations omitted). We explained that reckless indifference in this context requires "evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." Id. at *11 (citations omitted). We then discerned that,

in granting Providence's motion for JNOV regarding punitive damages, the trial court explained its reasoning as follows:

After careful review of the testimony, we believe there was insufficient evidence regarding the state of mind of Providence to show that its conduct amounted to anything more than negligence. [Appellant's] expert, Nurse … Sheppard, testified that the staff "should've known that if they didn't provide appropriate supervision, an adverse outcome could happen." However, "should have known" is not the requisite state of mind for punitive damages. Further[,] she testified that "[t]hey knew something bad could happen if they didn't do something appropriately like supervise and update her care plan, yet they didn't do that." She did not identify who specifically knew this, and yet still failed to act.

Nurse Sheppard testified that they "missed opportunities to go back and update the plan and make sure they were meeting [Elma's] needs" and that "the facility failed to anticipate her needs." These failures do not establish the state of mind necessary to impose punitive damages.

Moreover, there was no assertion that the employees at Providence deliberately failed to take action, or that any of the employees appreciated an unusually high risk, but still failed to do anything about it. See[,] e.g.[,] Jones v. McDonald's Corp., 958 F.Supp. 234 (E.D. Pa. 1997) … ("If the defendant actually does not realize the high degree of risk involved, even though a reasonable man in his position would, the mental state required for the imposition of punitive damages in Pennsylvania is not present.")[.]

> [Trial Court] Opinion and Order on Providence's Post-Trial Motions at 4-5 (some internal citations omitted).

> We agree with the trial court's observations. As it ascertained, Appellant does not point to any evidence demonstrating that Providence had a subjective appreciation of the risk of harm to which [Elma] was exposed due to its alleged failure to supervise her and update her care plan, and that Providence acted (or failed to act) in conscious disregard of that risk.

Id. (emphasis in original; internal citation omitted). In addition to rejecting Appellant's arguments that Providence was reckless in its alleged failure to supervise and update Elma's care plan, we also rejected Appellant's argument that Providence was reckless in purportedly understaffing its facility. Id. at *11-13. Accordingly, we agree with the trial court that Nurse Sheppard's reckless disregard testimony and the trial court's jury instruction on recklessness were improper.

Providence insists that it was prejudiced by these mistakes. It complains that the jury was able to hear and consider Nurse Sheppard's unsupported testimony and maintains that the jury instruction regarding recklessness, which had been given during the compensatory stage of trial, invited the jury to punish Providence instead of compensate Elma for her damages. Providence's Brief at 40; see also Harman, 756 A.2d at 1122 ("The harmless error doctrine underlies every decision to grant or deny a new trial. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate to the trial court that he or she has suffered prejudice from the mistake.") (citations omitted). Appellant advances no counter-

argument specifically addressing the prejudice, if any, experienced by Providence as a result of these errors. See Appellant's Reply Brief at 26-28; see Coulter, supra; Hakala, supra. Thus, because the record reflects that these errors misled the jury and contributed to its rendering an unfair compensatory damages verdict, and because Appellant proffers no persuasive argument to the contrary, we conclude that Providence suffered prejudice from these mistakes.

Finally, Appellant fails to convince us that the trial court abused its discretion in granting a new trial to Providence based on these prejudicial mistakes. The record supports the reasons provided by the trial court for granting a new trial due to Nurse Sheppard's improper testimony and the trial court's jury instruction on recklessness. Accordingly, we affirm the trial court's decision to grant Providence a new trial on liability and compensatory damages.[5,6]

Order granting new trial to Providence affirmed. Case remanded for further proceedings. Jurisdiction relinquished.

_____

[5] Because we conclude that a new trial is warranted due to Nurse Sheppard's testimony and the trial court's jury instruction regarding recklessness, we need not address any of the other reasons that the trial court provided for granting a new trial.

[6] Nothing in this memorandum shall affect our previous determinations in Temple I that the trial court properly granted JNOV on punitive damages, but erred in granting a nonsuit in favor of Grane. See Temple I, 2018 WL 3358598, at *18. We reiterate that Grane may be included in the new trial. Id.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:   1/5/2021